BRADLEY, Judge.
The appellant, Jenkins Brick Company, is appealing from a lower court holding in favor of the appellee, Carl Waldrop. We reverse.
Waldrop is a building contractor from Scottsboro, Alabama. He has been in this business for approximately ten years and has built an estimate of fifteen to twenty houses during this time.
Mr. Waldrop started construction on a home for Mr. and Mrs. Woods and had ordered sixteen thousand “Old South” brick from C & H Supply Company on February 10, 1977. C & H bought its brick from Jenkins Brick Company in Montgomery.
The brick for the Woods home had been sent by Jenkins in two batches. The first batch was sent on February 18, 1977. The second batch, however, was rejected by Waldrop because the color of the second batch did not match the color of the first batch of brick.
Jenkins sent two batches consisting of six thousand brick in each batch to help Wal-drop in matching up the colors of the ten thousand brick already laid on the Woods home. The third batch of six thousand was acceptable and the Woods home was completed.
*118 During this time, Mr. Larry Harris, a salesman for Jenkins brick went out to the Woods home to see about the brick matching problem. During a conversation between Harris and Waldrop, Mr. Waldrop mentioned another home construction he had agreed to do for a Mr. and Mrs. Wilkie. Waldrop mentioned that the brick the Wilk-ies wanted on their home was the same brick they had seen on a particular bank.
Mr. Harris left to look at the bank and returned that afternoon, stating the brick was “Old South” brick, the same as Wal-drop had used on the Woods home.
It was also during this conversation that Mr. Harris explained the differences in each different “run” of brick due to the clay, the process of “flashing” the brick with gas versus oil, and use of the kilns. Mr. Wal-drop testified he was aware of the brick coloration variations due to his years of experience in the construction business.
Waldrop testified that he agreed with Harris that he (Waldrop) would buy the twelve thousand leftover brick for the Wilkie job. Harris denies that such agreement existed.
Waldrop began laying the twelve thousand brick on the Wilkie home in July 1977. After eighty-five percent of the Wilkie home had been bricked, Waldrop realized he had miscalculated the amount of brick he needed, and was short by two thousand brick. When Waldrop realized his mistake, he ordered his brick layers to stop work, leaving fifteen hundred of the original twelve thousand brick unlaid.
Waldrop knew that any additional brick he ordered would have a difference in color and planned to blend the additional brick he ordered with the fifteen hundred unlaid brick. Waldrop testified this was a customary procedure in the construction business.
Waldrop admitted he had meant to order the brick all at the same time but did not due to his calculation mistake.
Jenkins did not have any brick left from the run from which the original twelve thousand had come, and therefore sent two thousand brick from another run. Waldrop accepted this brick and ordered his brick layers to begin interspersing the new shipment with the remaining fifteen hundred brick.
However, when the new owners saw the result of the new brick interspersed with the original shipment, they ordered the brick layers to stop work. The Wilkies informed Waldrop they found the new brick unacceptable because of a distinct color line. Mrs. Wilkie testified she had been happy with the bricking up until this point.
Jenkins made two sample runs of two thousand brick to try to match the first shipment of twelve thousand brick. The Wilkies also found these two shipments unacceptable.
Waldrop finally had to tear all of the old brick off the Wilkie house, purchase new brick from another company, and rebrick the house. Waldrop testified this cost him an additional $3,600.00. He ended up giving the Jenkins brick to his brother to use.
The trial court found for the plaintiff, Waldrop, holding that privity of contract existed between Waldrop and Jenkins on which to base this suit. The court further found there was an implied warranty of merchantability and an implied warranty of fitness for a particular purpose which was breached by Jenkins. There was a further finding that the brick initially accepted by Waldrop was later rightfully revoked and that Waldrop sustained damages in the amount of $3,600.00.
The appellant, Jenkins, claimed error by the trial court as to these findings.
The first issue raised by Jenkins on appeal is whether the trial court erred in finding that privity of contract existed between Jenkins and Waldrop.
The general rule in Alabama is that there is no right of action on an implied warranty of merchantability or fitness of use against a manufacturer for property damage without privity of contract. Wear v. Chenault Motor Co., 52 Ala.App. 382, 293 So.2d 298, cert. den., 292 Ala. 756, 293 So.2d 301 (1974).
*119 Waldrop contends that privity existed because of the meeting he had with Harris. Waldrop testified that Harris agreed to sell him the twelve thousand brick, and that subsequently, Jenkins moved the brick from the Woods job to the Wilkie job. Ben Young, executive vice-president of Jenkins Brick, also testified that Larry Harris was a salesman for Jenkins and had authority to sell brick. We think the evidence is sufficient to support a finding of privity of contract between Jenkins and Waldrop as to these twelve thousand brick. However, these brick were satisfactory to the Wilkies, and it was only the final two thousand brick ordered by Waldrop that were objectionable to the Wilkies. These two thousand brick are the basis of this lawsuit. Therefore, if Waldrop is to recover for breach of warranty, he must establish privity between himself and Jenkins as to the last two thousand brick purchased for the Wilkie job.
There was no evidence at trial establishing a privity relationship between Wal-drop and Jenkins for the purchase of the final two thousand brick. Waldrop testified that his agreement with Harris was for the purchase of only twelve thousand brick and that he had ordered no additional brick at this time because he did not know how many more he would need for the Wilkie job. In fact, Waldrop admitted that he probably ordered the final two thousand brick from C & H Supply Company. Wal-drop has offered no evidence showing any type of contractual relationship between himself and Jenkins as to these brick. The evidence indicates that Jenkins and Wal-drop were in privity as to the first twelve thousand brick purchased, but that Jenkins satisfactorily performed its obligation as to these brick. It was only after Waldrop discovered that he had miscalculated the number of brick he would need for the Wilkie job that a problem arose. The agreement between Jenkins and Waldrop was for twelve thousand brick only, and in order to establish privity, Waldrop must produce evidence indicating some type of contractual relationship between himself and Jenkins as to the last brick purchased. He has not done so. Therefore we think that Waldrop failed to establish any privity of contract as to the two thousand brick made the basis of this lawsuit. As there was no evidence to support a finding of privity of contract in the case at bar between Jenkins Brick Company and Mr. Waldrop, the trial court erred in so finding.
The only remaining issue for our determination is whether Jenkins breached an implied warranty of merchantability and an implied warranty of fitness for a particular purpose as to the first twelve thousand brick purchased by Waldrop. We previously noted that the trial court correctly found Jenkins and Waldrop to be in privity of contract as to these brick.
In an action for breach of an implied warranty, the plaintiff must prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach. Storey v. Day Heating & Air Conditioning Co., 56 Ala.App. 81, 319 So.2d 279 (1975).
There is no evidence in the record indicating that Jenkins breached an implied warranty as to the first twelve thousand brick purchased. After Waldrop had placed these brick on the house, the Wilkies stated that they were satisfied. Furthermore, Waldrop never raised any objection as to these twelve thousand brick. As previously noted, it was only when the last two thousand brick were placed on the house that there was a problem. Therefore we conclude that plaintiff failed to prove a breach of warranty as to the brick delivered to and accepted by him and his client.
In the absence of a breach of warranty for the brick accepted by plaintiff, the trial court was without authority to award damages. Consequently, the judgment of the trial court is reversed and the cause remanded for entry of judgment not inconsistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P. J., and HOLMES, J., concur.