John F. "Jack" WALSH, et al., Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

Civ. A. No. 81–1998.

United States District Court, District of Columbia.

March 14, 1984.

Beverly C. Moore, Jr., Bethesda, Md., Landon Gerald Dowdey, Washington, D.C., Seymour Kurland, Barry F. Schwartz, Kenneth J. Warren, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiffs.

William T. Coleman, Jr., Richard Warmer, Carl R. Schenker, Jr., John H. Beisner, O'Melveny & Myers, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's motion to dismiss, plaintiffs' opposition thereto, supplemental memoranda from both parties and oral argument on the motion. For the reasons stated below, the Court denies defendant's motion to dismiss second amended complaint.

This case has been before the Court since August 25, 1981. It involves an action for damages, declaratory and injunctive relief for breach of written and implied warranty, negligence, and strict liability for allegedly defective automatic transmissions in certain types of automobiles manufactured by defendant, Ford Motor Company ("Ford"). The complaint alleges that defendant's 1976–79, as well as certain 1980 model vehicles with FMX, C–3, C–4, or C–6 automatic transmissions, slipped into the reverse position after the driver had attempted to place the transmission in the park position. The second amended complaint includes 210 named plaintiffs described in some detail and 158 motor vehicles. The complaint alleges the existence of claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("Magnuson-Moss" or "the Act"), as well as various state statutes and common law. The Act permits "consumers" to sue in Federal court if they have been "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Act], or under a written warranty, implied warranty, or service contract," 15 U.S.C. § 2310(d)(1), and they have satisfied certain strict jurisdictional requirements.

Since the inception of this suit in August 1981, the Court has endured endless motions by both parties, including at least three motions to amend the complaint and as many motions to dismiss. The following motions are presently before the Court: defendant's motion to dismiss second amended complaint, plaintiffs' motion for class certification and defendant's motion to dismiss implied warranty claims for lack of vertical privity. At this time, the Court will address Counts I and II of defendant's motion to dismiss second amended complaint which allege Magnuson-Moss warranty claims. This will require the Court to delve into the vertical privity issues in order to address properly the motion to dismiss. Counts III through V of the complaint are not addressed in this decision. The Court's prior ruling of December 22, 1982, shall stand as to those counts.

## I. Background of this Litigation

On December 22, 1982, the Court issued a memorandum opinion which denied defendant's motion to dismiss the first amended complaint. *See* 1983–2 Trade Cas. ¶ 65,701 (1982). In that opinion, the Court concluded that plaintiffs had satis-

fied the 100-named plaintiff jurisdictional provisions of the Magnuson-Moss Act.

Finding it necessary to amend their first amended complaint, plaintiffs sought leave from the Court to file a second amended complaint. On May 23, 1983, the Court granted plaintiffs' motion. Ford had opposed that motion and noted that if the Court were to grant plaintiffs' motion for leave to file a second amended complaint, defendant would have to file another motion to dismiss in order to preserve its right of appeal.

On June 17, 1983, defendant filed its motion to dismiss the second amended complaint. The final briefing of this motion was to be completed on August 19, 1983. As early as February 1983, however, the Court had observed that there was substantial room for disagreement concerning some of the Court's determinations as outlined in the memorandum opinion of December 22, 1982. *See* Memorandum Order at 2, filed February 3, 1983. The Court subsequently concluded that it might be necessary to re-examine its 1982 decision and redetermine whether plaintiffs had satisfied the jurisdictional requirements under Magnuson-Moss. With that in mind, the Court requested an informal chambers conference to discuss, *inter alia*, the numerous motions that were before the Court and a possible extended briefing schedule and argument date for defendant's motion to dismiss the second amended complaint.

At that meeting, the parties agreed to submit additional briefing papers on the motion to dismiss. By order filed September 29, 1983, the Court directed plaintiffs to submit any additional briefing papers on the motion to dismiss by October 13, 1983. The Court further ordered defendant to file any additional papers by October 24, 1983. The hearing date for the motion to dismiss was later set for November 2, 1983.

Prior to oral argument, the Court issued a memorandum opinion dated October 28, 1983, staying plaintiff's motion to add parties to the second amended complaint. The Court imposed the stay on plaintiffs' mo-

tion in order to focus on the issues already before it, namely the motion to dismiss.

Since the hearing, both counsel have filed additional briefing papers on the motion to dismiss. In mid-January, the parties requested further opportunity to submit additional memoranda. The Court has denied those requests because it was determined that additional briefing could not be helpful to the Court.

■ During the course of the additional briefing, plaintiffs' counsel has indicated that it is somehow inappropriate for this Court to reconsider its prior rulings. First, it is evidently clear that the Court has the plenary power to reconsider any prior interlocutory judgments when it believes that its prior decision may have been incorrect or at least deserved careful re-examination and evaluation. *See John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922) (an interlocutory decree may be modified or rescinded by the court at any time before final judgment). Further, the Court must review carefully its prior decisions if it believes that those decisions are incorrect. *See In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 678 (D.C. Cir.1981).

The Court finds that plaintiffs have satisfied the strict jurisdictional requirements of the Act. Therefore, their Magnuson-Moss warranty claims in Counts I and II of the complaint have survived Ford's motion to dismiss. The Court outlines in detail its reasons for this conclusion below.

## II.

Plaintiffs' complaint includes two counts based on warranty claims under the Act. It alleges that Ford breached the implied warranty of merchantable quality and its written warranty to all plaintiffs and potentially similarly situated class members. Jurisdiction for these claims is based on section 110(d) of the Act, 15 U.S.C. § 2310(d)(3), which provides:

No claim shall be cognizable in a suit brought [in an appropriate district court of the United States]

 (A) if the amount in controversy of any individual claim is less than the sum or value of $25;

 (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

 (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3).

Defendant has moved to dismiss the Magnuson-Moss claims arguing that plaintiffs have failed to satisfy the strict jurisdictional, 100-named plaintiff requirement of the Act. It argues that because of the unique 100-named plaintiff requirement for class actions, plaintiffs must do more than merely assemble 100 individuals for subject-matter jurisdiction to attach in Federal court. It argues that each plaintiff, in order to be counted toward meeting the 100-named plaintiff requirement, must be able to state a claim for relief.

 In opposition, plaintiffs argue that the Court should not take a "merits inquiry" to determine whether it has jurisdiction. Instead, they argue, the Court must look to the doctrine outlined in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In that decision, the United States Supreme Court noted that:

 the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Id.* at 682, 66 S.Ct. at 776 (citations omitted).

Contrary to plaintiffs' assertion, the reasoning of *Bell v. Hood* is not applicable in the present case. *Bell v. Hood* was interpreting the broad general Federal question jurisdictional statute, the predecessor to Title 28, United States Code, Section 1331. Although it is true that a Federal court may not make a merits inquiry where jurisdiction is based solely on section 1331, that condition is not universally true when other jurisdictional statutes apply. There can be no argument that other jurisdictional statutes, including 28 U.S.C. §§ 1343, 1350, 1361, require a Federal court to make a merits inquiry before asserting subject matter jurisdiction under those provisions. *See Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 278–79, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977) (if a court were to base jurisdiction solely on 28 U.S.C. § 1343, it must make merits-related jurisdictional inquiry as to whether defendant was in fact a person within the meaning of 42 U.S.C. § 1983), *Apton v. Wilson,* 506 F.2d 83, 96 & n. 16 (D.C.Cir.1974) (*id.*); *Filartiga v. Pena-Irala,* 630 F.2d 876, 887–88 (2d Cir. 1980) (in interpreting the Alien Tort Statute, 28 U.S.C. § 1350, "[c]ourts have ... engaged in a more searching preliminary review of the merits than is required, for example, under the more flexible 'arising under' formulation. *Compare O'Reilly de Camara v. Brooke,* 209 U.S. 45, 52 [28 S.Ct. 439, 441, 52 L.Ed. 676] ... (1907) (question of Alien Tort Statute jurisdiction disposed of 'on the merits') (Holmes, J.) *with Bell v. Hood,* 327 U.S. 678 [66 S.Ct. 773, 90 L.Ed. 939] ... (1946)...."); *Associated Businesses of Franklin, Inc. v. Warren County Board,* 522 F.Supp. 1015, 1020 (S.D.Ohio 1981) (the Mandamus Act, 28 U.S.C. § 1361, requires a court to take a "merits inquiry" to determine the amount of discretion vested in a federal officer

before it may take jurisdiction), *National Treasury Employees Union v. Campbell*, 589 F.2d 669, 676 n. 14 (D.C.Cir.1978) (dictum) ("a determination on the merits is in effect required before the [Mandamus Act's] applicability can be decided").

■ The Court is in agreement with defendant's argument that the jurisdictional rule outlined in *Bell v. Hood* was designed to be a liberal one because it involves the *general Federal question* jurisdictional statute of 28 U.S.C. § 1331. But where "the jurisdiction of Federal courts ... has been narrowed by ... acts of Congress ... the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934) (footnote omitted). Under 15 U.S.C. § 2310(d)(3), Congress has sought to limit plaintiffs access to Federal courts. It established strict jurisdictional requirements in an attempt to channel most of the Act's litigation into State courts. *See* H.R.Rep. No. 93–1107, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 7702, 7724 ("The purpose of these jurisdictional provisions is to avoid trivial or insignificant actions being brought in the Federal courts.") The reasons for such strict jurisdictional limitation is that the rights under Magnuson-Moss and general warranty law are largely derived from the laws of individual states. *See, e.g.*, 15 U.S.C. § 2301(3), (7).

In determining whether a plaintiff has satisfied the jurisdictional requirements of Magnuson-Moss, courts have taken a close and careful inquiry. *Saval v. BL Ltd.*, 710 F.2d 1027, 1029 (4th Cir.1983) (close examination of the total amount of the sum in controversy is necessary to determine jurisdiction); *Lieb v. American Motors Corp.*, 538 F.Supp. 127, 132–35 (S.D.N.Y.1982) (*id.*); *Watts v. Volkswagen Artiengesellschaft*, 488 F.Supp. 1233, 1236 (W.D.Ark. 1980) ("Court[s] lack subject matter jurisdiction over class actions ... unless at the time federal jurisdiction was invoked there were 100 named plaintiffs."); *Barr v. General Motors Corp.*, 80 F.R.D. 136, 140 (S.D. Ohio 1978) (court *sua sponte* dismissed action for lack of subject matter jurisdiction because there were not 100-named plaintiffs). In fact, the jurisdictional preconditions of the Act have been termed "critical limitations upon *federal jurisdiction*." *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541, 543 (N.D.N.Y.1978) (emphasis in original). The *Novosel* court, in examining the legislative history of the Act, noted that "the purpose of these jurisdictional provisions is ... to avoid trivial or minor actions being brought as class actions in Federal district courts." *Id. See also* H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* 1974 Code Cong. & Admin.News 7702, 7724; *Skelton v. General Motors Corp.*, 660 F.2d 311, 319 n. 15 (7th Cir.1981). "Thus, the federal jurisdictional requirements of the Act ... evince an intent to limit the private remedy in federal court." *Skelton v. General Motors Corp.*, 660 F.2d at 319 n. 15; *see also Saval v. BL Ltd.*, 710 F.2d at 1030 ("§ 2310(d) ... is designed to restrict access to federal courts."). Indeed "the jurisdictional provisions of section 2310(d) were designed by Congress to assure that substantial class actions could be brought in federal court." *Jacks v. Firestone Tire & Rubber Co.*, C78–1261A, slip op. at 6 (N.D. Ohio June 4, 1974).

Federal courts have dismissed many cases for lack of subject matter jurisdiction where plaintiffs have failed to meet the 100-named plaintiff requirement. *E.g.*, *Watts v. Volkswagen Artiengesellschaft*, 488 F.2d at 1236; *Tutwiler v. General Motors Corp.*, No. 77–P–1143–S (N.D.Ala. March 6, 1977); *Jacks v. Firestone Tire & Rubber Co.*, No. C79–1261A, slip op. at 7.

■ Based on the above, it is evident to the Court that in order to comply with the exclusionary purposes of the Act, which are designed to limit the numbers and kinds of cases brought in Federal court, it must look closely at each plaintiff to determine whether he states a claim for relief before he may be counted towards meeting the 100-named plaintiff requirement. Without making that inquiry, the jurisdictional prerequisites established by Con-

gress could be easily circumvented by merely joining 100 individuals who may or may not have a valid claim for relief. The 100-named plaintiff requirement is a "substantial barrier," *In Re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1114 n. 2 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979), and in order to give it meaningful effect, at least 100-named plaintiffs must allege facts in the complaint sufficient to demonstrate an individual cause of action. Therefore, the Court will examine the complaint closely and determine whether plaintiffs have satisfied the jurisdictional requirements by assembling 100 or more individuals who allege claims sufficient to constitute an individual cause of action under the Act.

### III

### A. Duplicative Plaintiffs

■ In its December 22, 1982 memorandum opinion, the Court indicated that:

> counting the claims of joint owners of a single consumer product twice, as plaintiffs do, is improper for purposes of satisfying the 100 named plaintiff requirement. Permitting 50 joint owners of consumer products to bring a class action under the Magnuson-Moss Act would dilute significantly the plain intent of the 100 plaintiff rule.

*Garbo v. Ford Motor Co.,* 1983–2 Trade Cas. ¶ 65,701 (1982).

That reasoning is still sound. If the Court were to allow numerous plaintiffs to assert identical or related claims on a single Ford vehicle, the "substantial burden" of meeting the 100-named plaintiff requirement would be easily circumvented. Therefore, the Court will exclude, for jurisdictional counting purposes only, those duplicative and triplicative plaintiffs whose claims are based on the same vehicle. There are 210 total plaintiffs in this action which involve

157 vehicles. In subtracting fifty-three duplicative or triplicative plaintiffs from the total number of individuals who are listed in the complaint, 157 remain to be counted as plaintiffs for Magnuson-Moss jurisdictional purposes.[1]

### B. Statute of Limitations

Defendant also seeks dismissal of certain plaintiffs whose vehicles were purchased more than four years prior to the commencement of this action. Ford argues that under section 2–725 of the Uniform Commercial Code ("UCC") a seller's exposure to allegations of breach of written or implied warranty should not extend beyond four years from the date of purchase. *See, e.g., Clark v. DeLaval Separator Corp.,* 639 F.2d 1320, 1325 (5th Cir.1981).[2] Section 2–725 provides in pertinent part:

> § 2–725. Statute of Limitations in Contracts for Sale
>
> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made ....*

U.C.C. § 2–725 (emphasis added). The limitations period, however, may be tolled under certain circumstances. *See* U.C.C. § 2–725(4).

■ Plaintiffs argue that because they have alleged fraud, the limitations period is tolled. In the complaint plaintiffs state:

> Ford actively concealed the defects and extraordinarily high frequency of park to reverse incidents in its FMX, C–3, C–4, and C–6 transmissions by systematically denying the existence of any tendency of such transmissions to jump from park to reverse and by asserting contrarywise that such transmissions always slipped

---

1. The duplicative and triplicative plaintiffs are listed in Appendix A of this opinion.

2. Mississippi, Wisconsin, and South Carolina extend the statute of limitations for contractual claims to six years. *See* 1A Uniform Laws Annotated—Uniform Commercial Code § 2–725 Action in Adopting Jurisdictions (1976).

into reverse only because of the vehicle operator's negligence. Purchasers and owners and passengers who incurred personal injuries in connection with vehicles sold prior to August 21, 1977 were thereby discouraged from investigating and seeking a remedy for such defective transmissions and could not through the exercise of due diligence have discovered Ford's potential liability.

Plaintiffs' Second Amended Complaint at ¶ 33 ("Plaintiffs' Complaint"). It is clear, however, that the "[m]ere allegation of the word 'fraudulent' [concealment] is not sufficient to avoid the statute of limitations." *General Aircraft Corp. v. Air America, Inc.*, 482 F.Supp. 3, 8 (D.D.C.1979).

■ In addressing the limitation issue, this circuit has noted that a trial court must:

> [r]ead into every federal statute of limitations, including the adoption of an analogous local statute of limitations ... the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit.

*Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C.Cir.1977) *quoted in, Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C.Cir.1979), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). In applying this reasoning, this Court has observed that:

> [t]hree elements must be pleaded and proved in order to establish fraudulent concealment: (1) wrongful concealment by the party raising the statute of limitations defense (2) plaintiff's failure to discover the operative facts forming the basis of his cause of action during the limitations period (3) despite the exercise of due diligence.

*General Aircraft Corp. v. Air America, Inc.*, 482 F.Supp. at 8 *citing to, Charlotte Telecasters Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir.1976); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975). In applying this test the Court must "read with the required liberality" assertions in the complaint, before it may grant a motion to dismiss based on the running of the statute of limitations. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980).

In their complaint, plaintiffs not only allege that Ford actively concealed the existence of a transmission defect, but also told those who inquired about the problem that the alleged incidents were caused by driver error and negligence.

In response, Ford argues that the complaint, when read liberally, merely claims that when certain consumers raised questions about the transmissions, Ford denied that they were defective. It notes that neither a denial of wrong doing nor a failure to inform consumers of circumstances that could indicate that a consumer product is defective constitutes fraudulent concealment. *See, e.g., Rockwell v. Ortho Pharmaceutical Co.*, 510 F.Supp. 266, 270 (N.D. N.Y.1981).

Ford further notes that it consistently has taken the position that the transmissions at issue are not defective and that this position is reasonable given conclusions from prior court decisions. *See Center for Auto Safety, Inc. v. Lewis*, 685 F.2d 656, 663 (D.C.Cir.1982) ("the existence of a defect was not conclusively established. . . . The Department would have faced great difficulties in sustaining its burden to prove the existence of a defect. . . ."); *Center for Auto Safety, Inc. v. Lewis*, No. 81–0550, slip op. at 11 (D.D.C. Oct. 21, 1981) ("Ford steadfastly maintained that no defect existed, and the agency had difficulty documenting reported incidents of roll back. . . . [T]he agency ... faced ... difficult, if not insurmountable, problems of proving that a defect actually existed."). Therefore, Ford argues, its denials could not constitute fraudulent conduct.

■ The Court, however, concludes that plaintiffs have adequately pleaded that Ford did actively and affirmatively misrepresent to certain plaintiffs that the transmission failure occurred, not because of

possible design flaws, but because of driver error, despite knowledge of numerous complaints alleging exactly the same problem. Therefore, the Court finds that plaintiffs have adequately pleaded the first element necessary for proving fraudulent concealment, *i.e.*, wrongful concealment by Ford.

Plaintiffs have also successfully alleged that they failed to discover the alleged reasons for the transmission malfunction until after the limitations period had expired. Therefore, the second necessary element for claiming fraudulent concealment has been satisfied.

Plaintiffs, however, are unable to establish the third element necessary for proving fraudulent concealment; that of due diligence. To toll the statute of limitations for reasons of fraudulent concealment, plaintiff must be unable to discover the facts necessary to form the basis for a cause of action within the limitations period despite due diligence. *E.g., Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d at 394.

In October 1977, the National Highway, Traffic and Safety Administration ("NHTSA") began its investigation of the "park to reverse" incidents. In their complaint, plaintiffs assert that [o]nly after the NHTSA investigation commenced in October 1977 could consumers have reasonably suspected Ford's explanation to be erroneous." Plaintiffs' Complaint at ¶ 33. Of the fifty-five plaintiffs claimed by defendant to be time barred, forty-three of them allege "park to reverse" incidents or complained to Ford or its dealers after the commencement of the NHTSA investigation. If Ford and its dealers did, in fact, mislead certain plaintiffs as to the existence of a transmission defect on or after October 1977, these "consumers [could] have reasonably suspected Ford's explanation to be erroneous" * * * "after the NHTSA investigation commenced." *Id.*

Further, it is plain that once a governmental investigation commenced

"[those] proceedings should have aroused [plaintiffs'] suspicions, and [their] failure to investigate further ... was not the exercise of due diligence required in order to employ the fraudulent concealment doctrine to avoid that bar of the statute of limitations." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d at 394, *quoted in, United Klans of America v. McGovern*, 621 F.2d 152, 155 (5th Cir.1980); *accord, In Re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1170 (5th Cir.1979), *cert denied*, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980) (plaintiffs chargeable with knowledge of contents of public records); *see also Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807 (1879) ("the means of knowledge are the same thing in effect as knowledge itself.")

By plaintiffs' own admission, it was reasonably possible to discover that the statements made by Ford on or after October 1977 were in fact false. But plaintiffs failed to investigate further and therefore did not exercise the due diligence necessary to toll the limitations period. Further, it must be noted that in order to toll the limitations period, plaintiffs must have pled with sufficient particularity the facts and circumstances that demonstrate that there was, in fact, due diligence exercised by plaintiffs to discover that defendant's statements were false. *See, e.g., Wood v. Carpenter*, 101 U.S. at 143. Therefore, plaintiffs have neither properly alleged nor exercised due diligence so as to toll the limitations period.

Accordingly, the Court finds that those plaintiffs whose cars were purchased prior to August 21, 1977, and have alleged incidents or complained to Ford or its dealers on or after October 1977, are barred by the statute of limitations to assert warranty claims because they failed to exercise due diligence. Therefore, forty-three plaintiffs' warranty claims must be dismissed and may not be counted toward meeting the 100-named plaintiff requirement under Magnuson-Moss.[3]

---

**3.** Those plaintiffs who are barred from pursuing warranty claims by the statute of limitations are listed in Appendix B of this opinion.

■ Ford also seeks to dismiss those who were added to the first amended complaint in April 1982, and who purchased their vehicles more than four years prior to that date. It argues that, based on the Court's prior decisions, it is evident the Court did not have jurisdiction over the case, and therefore, the filing of the complaint did not toll the statute of limitations.

In opposition, plaintiffs cite to the reasoning outlined in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). That case provides that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. at 766 (footnote omitted) *quoted in, Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 2395, 76 L.Ed.2d 628 (1983). The Court concludes that when plaintiffs filed this complaint in August 1981, it effectively suspended the running of the statute of limitations for subsequent plaintiffs. Therefore, those twenty-two plaintiffs which defendant seeks to have dismissed on statute of limitations grounds must be considered as part of this action and further must be counted toward meeting the 100-named plaintiff requirement.

### C. Implied Warranty Claim

■ The implied warranty claims in Count I of the complaint state in pertinent part that "Ford is in violation of the Act, 15 U.S.C. § 2310(d)(1), for breach of implied warranty of merchantable quality, for which Ford is liable to ... plaintiffs...." Plaintiffs' Complaint at ¶ 37.

In addressing this claim, Ford argues that numerous plaintiffs must be dismissed and cannot be counted towards meeting the 100-named plaintiff requirement because they fail to state a claim for relief. Specifically, it argues that certain plaintiffs with implied warranty claims, when examined under their own State law, cannot assert a claim for relief because they lack the re-quired vertical privity with Ford. The requirement in certain states of vertical privity demands that a consumer, in order to bring warranty claims against the manufacturer, must have purchased the product in question directly from that manufacturer. It is undisputed that there are no plaintiffs in this action who purchased their vehicles directly from Ford. Therefore, plaintiffs are not in privity of contract with Ford, but rather only with independent Ford dealers or the former owners of the vehicle.

Ford argues that State privity laws are preserved under the Act and must be considered by the Court before a plaintiff may assert an implied warranty claim under Magnuson-Moss. Ford bases its privity argument on the express provisions of the Act. It notes that although the Act provides for a Federal cause of action for breach of implied warranty, the Act defines implied warranty as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Therefore, it argues that those States which require vertical privity in order to pursue implied warranty claims would bar certain plaintiffs from pursuing said claims.

In response plaintiffs have argued that State law privity doctrines do not apply under Magnuson-Moss because the Act creates a new Federal private cause of action for breach of implied warranty. Therefore, plaintiffs assert, the requirement that vertical privity exist between the purchaser and Ford is eliminated under the Act and cannot serve as a barrier for pursuing implied warranty claims. Specifically, plaintiffs cite to the Act's definition of "consumer," "supplier," and "warrantor" as a basis for arguing that state privity law has been superseded. When reading those definitions into section 2310(d)(1), plaintiffs argue, the Court must conclude that any person to whom the vehicle is transferred dur-

ing the life of the implied warranty is entitled to enforce that warranty by bringing suit.

Certainly, it is axiomatic that where the meaning of the statute is plain on its face, this Court need not take further inquiry into its purpose. *See Consumer Products Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Here, Congress has specifically provided that implied warranties "arise" under State law. 15 U.S.C. 2301(7). If, in this action, there are to be any implied warranty claims at all under Magnuson-Moss, they must "originate" from or "come into being" from state law.[4] Therefore, if a State does not provide for a cause of action for breach of implied warranty where vertical privity is lacking, there cannot be a Federal cause of action for such a breach.

The statutory history in this matter is also clear. In a Senate report from the Committee on Commerce, the committee stated that:

> It is not the intent of the Committee to alter *in any way* the manner in which implied warranties are created under the Uniform Commercial Code. For instance, an implied warranty of fitness for a particular purpose which might be created by an installing supplier is not, in many instances, enforceable by the consumer against the manufacturing supplier. *The Committee does not intend to alter currently existing state law on these subjects.*

Senate Comm. on Commerce, S.Rep. No. 151, 93d Cong., 1st Sess. 21 (1973) (emphasis added). Other portions of the Act's statutory history support the conclusion that state implied warranties, including privity requirements, are not to be changed by the enactment of Magnuson-Moss. *See, e.g.,* Hearings on Consumer Warranty Protection before the Subcomm. on Commerce & Finance of the House Comm. on Inter-

state and Foreign Commerce, 93d Cong., 1st Sess. 91, 94 (March 20, 1973).

Further, numerous cases have come to the same conclusion, finding that a plaintiff cannot assert an implied warranty claim for relief under Magnuson-Moss where he lacks vertical privity and where his State requires that such privity be present. *See Illinois Collection Service, Inc. v. General Motors Corp.,* No. 82 C 2743, slip op. at 2 (N.D.Ill. Nov. 22, 1982); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595, 605 n. 13 (S.D.N.Y.1982); *Mendelson v. General Motors Corp.,* 105 Misc.2d 346, 432 N.Y.S.2d 132 (Nassau Co.1980) *aff'd,* 81 A.D.2d 831, 441 N.Y.S.2d 410 (2d Dept. 1981); *Mikos v. Ed Napleton Pontiac, Inc.,* No. 80 L 3105 (Ill.Cir.Ct., Cook County Nov. 13, 1980). *Contra Ventura v. Ford Motor Corp. [sic],* 180 N.J.Super. 45, 433 A.2d 801 (App.Div.1981); *Hyde v. General Motors Corp.,* No. 21306/80, slip op. (N.Y. Sup.Ct.N.Y.Co. Oct. 16, 1981).

In addition, a number of commentators have agreed that State privity rules do apply when determining the existence of an implied warranty cause of action under Magnuson-Moss. *E.g.,* Miller & Kanter, *Litigation Under Magnuson-Moss,* 13 U.C. C.L.J. 10, 21 (1980). In his government regulation/practice handbook entitled, *Consumer Protection Under the Magnuson-Moss Warranty Act,* commentator Curtis R. Reitz notes that:

> The Magnuson-Moss Act is not responsible for creating any new implied warranties for sales of goods. When referring to an *implied warranty,* the act means "an implied warranty arising under State law ... in connection with the sale by a supplier of a consumer product." § 2301(7). The scope of consumer protection from implied warranties under the Magnuson-Moss Act is thus no greater than that previously recognized under state law.

Reitz, Curtis R., *Consumer Protection Under the Magnuson-Moss Warranty Act* at 63–64 (1978) (emphasis in original).

---

**4.** The Random House Dictionary of the English Language (Random House, N.Y.1969) defines

arise as "1. to come into being, action, or notice originate; appear; spring up".

Plaintiffs, however, argue that the definitions "consumer," "supplier," and "warrantor" in section 2301 abolish any state law privity requirements. They assert that by transposing these definitions into the subsection that provides for civil actions by consumers for breach of warranty, the Court is compelled to conclude that State privity requirements are abolished. When transposing these definitions of section 2301, section 2310(d)(1) provides:

> ... a consumer [including "a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred"] who is damaged by the failure of a supplier ["any person engaged in the business of making a consumer product directly or indirectly available to consumers"] [or] warrantor ["any supplier or other person who ... is or may be obligated under an implied warranty"] ["arising under State law"] ... to comply with ... an implied warranty ["arising under State law"] ... may bring suit....

In adding these definitions to section 2310(d)(1), it is still evident to this Court that an action under Magnuson-Moss may be brought by a "consumer who is damaged by the failure of a supplier to comply with any obligation under [the act] ... includ[ing] implied warranties arising under State law." H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 7702, 7723. The definitions do not alter the requirement that an implied warranty, if it is to arise at all, must arise under State law and "[i]f state law requires vertical privity to enforce an implied warranty and there is none, then, like the yeastless souffle, the warranty does not 'arise.' " *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. at 605 n. 13.

■ The Court must now look to the States where the vehicles were purchased by the ultimate consumer. *See, e.g., Brendle v. General Tire and Rubber Co.,* 505 F.2d 243, 244 (4th Cir.1974); *Fosen v. Unit-*

*ed Technologies Corp.,* 484 F.Supp. 490, 504 (S.D.N.Y.) *aff'd mem.,* 633 F.2d 203 (2d Cir.1980). Although Ford has argued that it is the law of the State where the purchaser resides that determines implied warranty claims, that assertion is incorrect. It is plain that

> [w]hen it is sought to recover against a manufacturer or a seller of a product which has caused injury on the ground that such manufacturer or seller has breached a warranty concerning the product, it is held that liability is determinable in accordance with the law of the place of *sale* of the product....

Am.Jur.2d Products Liability § 213 (1972) (emphasis added). Therefore, the Court will look only to those States where plaintiffs purchased their vehicles and not to where they reside.

In applying the law of the States where the vehicles were purchased, Ford argues that certain plaintiffs who purchased their vehicles in Alabama, Arizona, California, Connecticut, Florida, Illinois, Indiana, New Jersey, New York, North Carolina, Ohio, Washington, and Wisconsin have no cause of action for implied warranty because they have no contractual relationship with Ford and, therefore, lack vertical privity.

In opposition, plaintiffs argue that a number of these States do not require vertical privity in actions for breach of implied warranty and even if there were such a requirement, certain States have recognized exceptions to the privity doctrine that must be applied to this case. These exceptions include circumstances where (1) a manufacturer gives a written warranty directly to the remote purchaser, an implied warranty attaches by operation of law; (2) "direct dealings" between the manufacturer and a remote consumer create an exception to the privity doctrine and (3) plaintiffs are third-party beneficiaries of the sale contracts between Ford and its dealers.

■ Before addressing the question of privity on a State-by-State basis, it is

important to note that Magnuson-Moss is strictly a warranty statute based in contract law. When Congress passed the Act, it incorporated UCC-based State warranty law and not State tort law. In a House Report, the Committee on Interstate and Foreign Commerce looked exclusively to the U.C.C., not State tort law, to define implied warranties:

> An implied warranty arises by operation of law rather than out of an agreement or action of the parties to the sale and purchase. Unless they are expressly modified or excluded these implied warranties arise in every sale. Two types of implied warranties under the Uniform Commercial Code, which are pertinent here are the implied warranties of merchantability and of fitness.

H.R.Rep. No. 93–1107, 93rd Cong., 2d Sess. 6, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7702, 7707. *Cf. Gorman v. Saf-T-Mate, Inc.,* 513 F.Supp. 1028, 1033 (N.D. Ind.1981) (Act designed to facilitate relief for small warranty claims seeking repair, replacement or refund, not designed to address personal injury tort claims). Further, insofar as Magnuson-Moss deals with implied warranties, it specifically addresses supplier disclaimer practices. 15 U.S.C. § 2308. The Court notes that disclaimers are generally irrelevant under State tort law. Therefore, the Court must presume that Congress did not have State tort law in mind when it addressed itself to implied warranty claims. It is plain to the Court that where a State permits warranty claims that are based on either tort or contract law, the Court must look exclusively to contract law to determine whether privity is required to pursue implied warranty claims.

The Court will now examine the law in each of the thirteen states that Ford claims requires vertical privity to determine whether a contractual relationship is in fact required between a consumer and a remote manufacturer in order to pursue a claim for breach of implied warranty.

*Alabama*

■ The following plaintiffs are alleged to have purchased their vehicles in Alabama: Janice C. Harper (¶ 19(II)(hh)) and Tindell F. Tyler (¶ 19(II)(jjjj)).

In Alabama privity of contract is required to maintain an action for breach of implied warranty. The court in *Jenkins Brick Co. v. Waldrop,* 384 So.2d 117, 118 (Ala.Civ.App.1980), notes that "[t]he general rule in Alabama is that there is no right of action on an implied warranty of merchantability or fitness of use against a manufacturer for property damage without privity of contract." *See also Laird v. John Deere Co.,* 52 Ala.App. 464, 294 So.2d 165, 168 (1974) (except in the case of personal injury, "doctrine of privity of contract remains in effect in this state"); *Wear v. Chenault Motor Co.,* 52 Ala.App. 382, 293 So.2d 298, 301 *cert. denied,* 292 Ala. 756, 293 So.2d 301 (1974). Because plaintiffs Janice Harper and Tindell Tyler lack vertical privity, they may not pursue implied warranty claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

*Arizona*

The following plaintiffs are alleged to have purchased their vehicles in Arizona: The Ole' Black Kettle Restaurant, Inc. (¶ 19(II)(b)) and Sarah C. Cromer (¶ 19(II)(ddd)).

■ In Arizona, privity of contract is required to maintain an action for breach of implied warranty under the U.C.C. *E.g., Flory v. Silvercrest Industries, Inc.,* 129 Ariz. 574, 633 P.2d 383, 388–90 (1981); *see also Rocky Mountain Fire & Casualty Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851, 856 (1982); *Seekings v. Jimmy GMC of Tucson, Inc.,* 130 Ariz. 596, 638 P.2d 210, 215 (Ariz.1981); *Eck v. Helene Curtis Industries, Inc.,* 9 Ariz.App. 426, 453 P.2d 366, 369 (1969). Because plaintiffs Ole' Black Kettle Restaurant, Inc. and Sarah Cromer lack vertical privity, they may not pursue implied warranty

claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

### California

The following plaintiffs are alleged to have purchased *used* vehicles in California: R.J. and Elizabeth G. Anderson (¶ 19(II)(r)) and George E. McInnis (¶ 19(II)(xxx)).

■ California does not require vertical privity of contract for breach of implied warranty between the manufacturer and the consumer-purchaser where he purchased a *new* vehicle. The State does, however, have a statutory exception where a consumer has purchased a vehicle second-hand. In those circumstances, vertical privity is required. *See* Cal.Civ.Code § 1791(a), 1791.1(d) (West 1973 and Supp. 1984); *Burr v. Sherwin Williams Co.,* 42 Cal.2d 682, 268 P.2d 1041, 1048 (1954); *Rodrigues v. Campbell Industries,* 87 Cal. App.3d 494, 151 Cal.Rptr. 90, 93 (4th Dist. 1978); *Hauter v. Zogarts,* 14 Cal.3d 104, 120 Cal.Rptr. 681, 687 n. 8, 534 P.2d 377 (1975). Because plaintiffs R.J. and Elizabeth Anderson and George McInnis lack vertical privity, they may not pursue implied warranty claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

### Connecticut

The following plaintiffs are alleged to have purchased their vehicles in Connecticut: Radcliffe H. and Lillian T. Smith (¶ 19(II)(yyyy)) and George A. Qua (¶ 19(III)(d)).

■ In Connecticut, privity of contract is required for breach of implied warranty. *E.g., Koellmer v. Chrysler Motors Corp.,* 6 Conn.Cir. 478, 276 A.2d 807, 812 (1970), *certif. denied,* 160 Conn. 590, 274 A.2d 884 (1971). The *Koellmer* court noted that although vertical privity is not required in tort, it is necessary in contract warranty law. When "the pleadings sound in contract rather than tort ... privity of contract between the parties must be shown." *Id.* at 812. Because plaintiffs Radcliffe and Lillian Smith and George Qua lack vertical privity, they may not pursue implied warranty claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

### Florida

The following plaintiff is alleged to have purchased his vehicle in Florida: Harris Nykamp (¶ 19(II)(qq)).

■ Defendant argues that Florida requires that vertical privity be present when pursuing implied warranty claims. It pursues this argument despite a long line of Florida cases that hold that privity of contract is not required when pursuing implied warranty claims. *See Manheim v. Ford Motor Co.,* 201 So.2d 440, 441–42 (Fla. 1967); *Rehurek v. Chrysler Credit Corp.,* 262 So.2d 452, 455 (Fla.App.1972); *Favors v. Firestone Tire & Rubber Co.,* 309 So.2d 69, 71–72 (Fla.App.1975). Ford claims, however, that the Supreme Court of Florida's ruling in *West v. Caterpillar Tractor Co.,* 336 So.2d 80, 86–90 (Fla.1976), implicitly overruled those decisions. The Court does not agree. The decision in *West* did not address the question of whether indirect purchasers face vertical privity obstacles in Florida. Further, in a case decided after the *West* opinion, the United States Court of Appeals for the Fifth Circuit noted that indirect purchasers may recover against manufacturers under an implied warranty theory. *Smith v. Fiat-Roosevelt Motors, Inc.,* 556 F.2d 728, 730 (5th Cir. 1977). Therefore, this Court must conclude that the dictum in *West* did not reverse a long line of Florida decisions that hold that vertical privity is not required in order for a consumer to pursue claims against a manufacturer under the theory of implied warranty. Plaintiff Harris Nykamp may pursue his claim for breach of implied warranty and may be counted toward meeting the 100-named plaintiff requirement under the Act.

*Illinois*

The following plaintiffs are alleged to have purchased their vehicles in Illinois: Harold G. Soladay (¶ 19(I)(w)); James E. and Lillian A. Cepek (¶ 19(II)(c)); Cecil L. Crowe (¶ 19(II)(1)); Dennis L. Bugbee (¶ 19(II)(p)); Vivian B. Gey (¶ 19(II)(y)); Tom Davis Electric Company (¶ 19(II)(jjj)); James L. and Nan J. Gerber (¶ 19(II)(sss)); Vondracek TV Company (¶ 19(II)(www)); Betsy A. Aird (¶ 19(II)(gggg)); Kenneth E. Turner (¶ 19(II)(mmmm)); and Lawrence R. Jauch (¶ 19(II)(ssss)).

■ In Illinois, privity of contract is required to maintain an action for breach of implied warranty. *E.g., Mellander v. Kileen,* 86 Ill.App.3d 213, 41 Ill.Dec. 639, 407 N.E.2d 1137, 1138 (1980); *see also Suvada v. White Motor Co.,* 32 Ill.2d 612, 210 N.E.2d 182, 184 (1965); ("[T]he 'general rule' [is] that ... a manufacturer is not liable ... to third parties who have no contractual relations with him."); *Stewart Warner Corp. v. Burns International Security Services, Inc.,* 343 F.Supp. 953, 954 (N.D.Ill.1972) ("Illinois courts ... still require privity of contract to maintain actions on implied warranties.").

Plaintiffs argue, however, that Illinois recognizes a "third-party beneficiary" exception to the privity requirement and cite *Rhodes Pharmacal Co. v. Continental Can Co.,* 72 Ill.App.2d 362, 219 N.E.2d 726 (Ill.App.1966) and *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 42 Ill.Dec. 25, 408 N.E.2d 403 (Ill.App.1980). Those cases involve the sale of goods from an original manufacturer to a secondary manufacturer and then to an ultimate user. Both *Rhodes* and *Frank's* held that where there is a direct relationship between the original manufacturer and the ultimate user, no privity is required. *Rhodes Pharmacal Co. v. Continental Can Co.,* 219 N.E.2d at 732; *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 408 N.E.2d at 412. The Appellate Court of Illinois, First District has reasoned in those decisions that "where a seller makes a product for a user who is not a direct buyer, but with whom the seller has direct dealings," *Rhodes,* 219 N.E.2d at 732, or where the original manufacturer "was clearly aware that the order from the [secondary manufacturer or supplier] was on behalf of the [ultimate user] and it shipped the goods ... directly to the [user]," *Frank's,* 408 N.E.2d at 412, vertical privity should not serve as a bar to pursue implied warranty claims.

The limited exception to the privity requirement for breach of implied warranty in Illinois, however, is not applicable in the present case. There has been neither direct dealing by Ford with the ultimate consumer nor were the vehicles manufactured to the requirements of the ultimate user. Plaintiffs argue that the holdings in these cases are not limited to the circumstances outlined above. They fail, however, to note any cases which are factually similar to the present case which recognize the "third-party beneficiary" exception to the privity requirement.

In two recent Illinois decisions quite similar to the present case, *i.e.,* suits against remote automobile manufacturers under Magnuson-Moss, the courts held that privity is required in order to pursue implied warranty claims. *Illinois Collection Service, Inc. v. General Motors Corp.,* 82 C 2743, slip op. at 2 ("The State law of Illinois requires privity between plaintiff and defendant, which is lacking here."). *Mikos v. Ed Napleton Pontiac,* No. 80 L 3105 ("Under Illinois law, privity of contract is a prerequisite to suit for breach of implied warranty alleging economic loss."). Accordingly, the Court is not pursuaded by plaintiffs' argument that Illinois' "direct dealing" exception to the requirement of privity is applicable here. It finds that in the present case, Illinois law requires the presence of vertical privity in order to pursue implied warranty claims. Because plaintiffs Harold Soladay, James and Lillian Cepek, Cecil Crowe, Dennis Bugbee, Vivian Gey, Tom Davis Electric Company, James and Nan Gerber, Vondracek TV

Company, Betsy Aird, Kenneth Turner, and Lawrence Jauch lack vertical privity, they may not pursue implied warranty claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

*Indiana*

The following plaintiffs are alleged to have purchased their vehicles in Indiana: Myron L. Riddle (¶ 19(II)(jj)); Larry A. Brown (¶ 19(II)(oo)); William T. Spannagel (¶ 19(II)(zz)); and James W. Knapp (¶ 19(II)(tttt)).

■ In Indiana, privity of contract is generally required to maintain an action for breach of implied warranty. *E.g., Lane v. Barringer*, 407 N.E.2d 1173, 1175 (Ind. App.1980); *Candlelight Homes, Inc. v. Zornes*, 414 N.E.2d 980, 981 (Ind.App. 1981); *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1010 (7th Cir.1982).

Plaintiffs have argued, however, that the "direct dealing" exception to the Indiana vertical privity requirement is applicable here. Plaintiffs refer to *Richards v. Goerg Boat & Motors, Inc.*, 179 Ind.App. 102, 384 N.E.2d 1084 (1979) which discusses in detail the "direct dealing" exception. The exception, however, is not applicable to the present case. In *Richards*, the court concluded that there were certain facts present in that case which brought the manufacturer in privity with the purchaser. Despite the fact that the buyer paid the dealer for the purchase of a houseboat, the purchaser was in privity with the manufacturer because the manufacturer was "involved [in] *all* the attributes of a sales transaction ...." *Id.* at 1092 (emphasis added). This included discussion with the manufacturer's employees at a boat show, demonstration at the manufacturer's plant, discussion about design problems, and the presence of the manufacturer at the closing. *Id.*

The Court is not persuaded by plaintiff's argument that Indiana's "direct dealing" exception is applicable to the present case. Defendant has neither had direct contact nor sufficient participation with the individual plaintiffs during the sale of Ford vehicles. Therefore, the implied warranty claim of plaintiffs Myron Riddle, Larry Brown, William Spannagel, and James Knapp may not be pursued and those plaintiffs may not be counted toward meeting the 100-named plaintiff requirement under the Act.

*New Jersey*

The following plaintiffs are alleged to have purchased their vehicles in New Jersey: Martha D. Meidinger (¶ 19(I)(s)); Thomas A. and Alice L. Burns (¶ 19(II)(k)); Menorah Chapels at Millburn, Inc. (¶ 19(II)(s)); George Pradarits (¶ 19(II)(uuu)); Robert Mahler (¶ 19(III)(b)); and Adrienne C. Thurston (¶ 19(III)(r)).

■ In New Jersey, privity of contract is required to maintain an action for breach of implied warranty. *E.g., Herbstman v. Eastman Kodak Co.*, 68 N.J. 1, 342 A.2d 181, 185 (1975); *Rosenau v. New Brunswick*, 51 N.J. 130, 238 A.2d 169, 174–76 (1968); *Monsanto Co. v. Alden Leeds, Inc.*, 130 N.J.Super. 245, 326 A.2d 90, 95 (1974); *see also Ventura v. Ford Motor Corp.*, 433 A.2d at 808 (in a Magnuson-Moss action, the court implicitly recognized the requirement of privity in New Jersey sales law.) The requirement of privity is necessary where the claim is contract-based. In New Jersey, only where a claim is based in tort, is the concept of privity abandoned. *See Rosenau v. New Brunswick*, 238 A.2d at 175.

Plaintiffs, however, cite to an unreported trial court opinion in New Jersey, *McSweeney v. BMW of North America, Inc.*, No. L. 22079–81 (N.J.Super.Ct., Law Div.Essex Cty., May 21, 1982), as support for the proposition that New Jersey has eliminated the artificial "tort" and "contract" labels. That court's opinion, under New Jersey law and as the court itself recognized, is of no precedential value. *See id.*, Transcript of Friday, June 25, 1982 at 19. Further, it is based on what this Court believes is an erroneous conclusion, that is, that Magnuson-Moss establishes its own implied warranty law without regard to the various privity requirements of the many States.

Accordingly, it is this Court's conclusion that New Jersey requires the presence of vertical privity between parties where plaintiffs pursue warranty claims that sound in contract. Because plaintiffs Martha Meidinger, Thomas and Alice Burns, Menorah Chapels at Millburn, Inc., George Pradarits, Robert Mahler, and Adrienne Thurson lack vertical privity, they may not pursue implied warranty claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

*New York*

The following plaintiffs are alleged to have purchased their vehicles in New York: Patricia E. Newberry (¶ 19(I)(t)); Judith A. Rosenthal (¶ 19(II)(f)); Mildred E. Smith (¶ 19(II)(h)); Rhoda E. Rosenblum (¶ 19(II)(kk)); Helen O. Howland (¶ 19(II)(11)); Ronald P. Dawley (¶ 19(II)(iii)); Arthur L. Diamond (¶ 19(II)(bbbb)); Harold W. Whitford, Sr. (¶ 19(II)(ffff)); Gordon E. Critoph (¶ 19(II)(oooo)); Vincent Agnifilo (¶ 19(II)(vvvv)); and Everett Poggi (¶ 19(III)(c)).

▮ In New York, privity of contract is required to maintain an action for breach of implied warranty. *See, e.g., Martin v. Dierick Equipment Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 188, 374 N.E.2d 97 (1978).

In *Martin*, the court noted the distinction between breach of implied warranty in contract and strict liability in tort: that of the requirement of privity in implied warranty in contract cases:

[A] cause of action for breach of warranty is a contractual remedy—a remedy which seeks to provide the parties with the benefit of their bargain. It is, in essence, a remedy designed to enforce the agreement, express or implied, of the parties and to place them, should one of the parties fail to perform in accordance with the agreement, in the same position they would have been had the agreement been performed. [Citations omitted.]

\*　　\*　　\*　　\*　　\*　　\*

[A] plaintiff who is not in privity with the seller of the product which is alleged to have caused his injury possesses a cause of action in negligence or strict products liability as opposed to what has often been incorrectly labeled breach of warranty.

*Id.* at 188, 374 N.E.2d 97. The court went on to state that different rules apply for tort and for contract claims for breaches of "implied warranty."

In this regard, we have stated on a previous occasion: "Whatever may have been earlier doubt and confusion, the authorities are now in general agreement that strict products liability sounds in tort rather than in contract. 'It has been said over and over again that this warranty— if that is the name for it—is not the old sales warranty, it is not the warranty covered by the Uniform Sales Act of the Uniform Commercial Code. It is not a warranty of the seller to the buyer at all, but it is something separate and distinct which sounds in tort exclusively, and not at all in contract; which exists apart from any contract between the parties; and which makes for strict liability in tort.'" (*Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395, 402, 373 N.Y. S.2d 39, 43, 335 N.E.2d 275, 278, *supra*

. . . .

The effect of the rule in the *Victorson* case, *supra* and the analysis of this case is not to raise again the "citadel of privity". On the contrary, ... the analysis in the present case manifests the flowering in New York of the doctrine of strict products liability making unnecessary the distortions previously required [in warranty law] to permit injured plaintiffs to recover from those who put defective products into the stream of commerce.

*Id.* at 188, 374 N.E.2d 97. *Accord Fosen v. United Technologies Corp.*, 484 F.Supp. 490, 504–05 (S.D.N.Y.), *aff'd mem.*, 633 F.2d 203 (2d Cir.1980) ("in New York a party not in privity with the seller has no cause of action for breach of warranty"); *Titlebaum v. Loblaws, Inc.*, 64 A.D.2d 822, 407 N.Y.S.2d 307, 308 (4th Dept.1978) ("it is now settled that lack of privity is a legiti-

mate defense to a products liability action based on breach of warranty"); *see also Schiavone Construction Co. v. Elgood Mayo Corp.*, 81 A.D.2d 221, 439 N.Y.S.2d 933, 934 (1st Dept.1981) ("no recovery could be had against [defendant] on the theory of breach of warranty because there is no privity").

In *Mendleson v. General Motors Corp.*, 432 N.Y.S.2d at 134, the court, in a case involving an implied warranty claim against automobile manufacturer under Magnuson-Moss, dismissed the claim for lack of privity. It noted that:

> As the Court of Appeals ... noted in [*Martin* ], a cause of action in strict products liability is often "incorrectly labeled breach of warranty" but is distinguishable upon the ground that the strict products liability sounds in tort and endeavors to make the injured party "whole" whereas the warranty action sounds in contract and seeks to provide the parties with the "benefit of the bargain."

*Id.* at 134 *citing to, Martin v. Dierick Equipment Co.*, 403 N.Y.S.2d at 188, 374 N.E.2d 97. *See also Hole v. General Motors Corp.*, 83 A.D.2d 715, 442 N.Y.S.2d 638, 641 (3rd Dept.1981) (where plaintiff pursues implied warranty claims of economic losses against parties not in privity, claims dismissed).

For the reasons stated above, the Court concludes that New York does require the existence of vertical privity for action sounding in contract. Because plaintiffs Patricia Newberry, Judith and Mildred Rosenthal, Mildred Smith, Rhoda Rosenblum, Helen Howland, Ronald Dawley, Arthur Diamond, Harold Whitford, Gordon Critoph, Vincent Agnifilo and Everett Poggi lack vertical privity, they may not pursue implied warranty claims and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

*North Carolina*

The following plaintiffs purchased their vehicles in North Carolina: B & W Grain, Inc. (¶ 19(II)(a); Nora Green (¶ 19(II)(q)); Sara E. Locklear (¶ 19(II)(mmm)); and Joseph H. Howell (¶ 19(III)(q)).

Defendant asserts that North Carolina does require that there be vertical privity between the manufacturer and the consumer in order to bring an implied warranty claim. Plaintiffs cite the decision in *Richard W. Cooper Agency, Inc. v. Irwin Yacht & Marine Corp.*, 46 N.C.App. 248, 264 S.E.2d 768 (1980) which states that the plaintiff may not pursue a "claim based on breach of implied warranty of merchantability ... because ... implied warranties are based on contractual theory and there is no privity of contract between the plaintiff-buyer and the defendant-manufacturer." *Id.* at 770.

Subsequent to that decision, the Supreme Court of North Carolina determined that "privity is not required" in implied warranty claims. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405, 414 (1982).

Defendant has argued, however, that the decision in *Bernick* is limited to those cases which involve personal injuries and the existence of express warranty through advertising. The Court disagrees. The Supreme Court of North Carolina in *Bernick* based its decision on the reasoning of *Kinlaw v. Long Manufacturing of North Carolina, Inc.*, 298 N.C. 494, 259 S.E.2d 552, 555 (1979). *Kinlaw* did not involve either personal injuries or the existence of express warranty through advertising. The plaintiff in *Kinlaw* brought a claim for breach of express written warranty because of the constant breakdown of his farm tractor. The Supreme Court in *Kinlaw* abolished the requirement of privity for express written warranty, noting that it served no "sensible" purpose. *Id.* at 557. The Court in *Bernick* adopted the reasoning in *Kinlaw* and also applied it to implied warranty claims. It noted that "[t]he rationale of *Kinlaw* applies with equal force to the case before us. 'The privity bound procedure whereby the purchaser claims against the retailer, the retailer against the distributor, and the distributor, in turn, against the manufacturer ... is unnecessarily expensive and wasteful.'" *Bernick v. Jurden*, 293 S.E.2d at 414, *quoting Kinlaw v. Long Manufacturing of North Carolina, Inc.*,

259 S.E.2d at 557 (citations omitted). Despite defendant's assertion, there is no language in the *Bernick* opinion that limits the court's holding to only those cases where personal injury is involved or where there is an express warranty . arising through advertising. Therefore, the Court must conclude that the decision in *Richard W. Cooper Agency* no longer is the prevailing law in North Carolina and that vertical privity is not required in order to bring a claim for breach of implied warranty. Plaintiffs B & W Grain, Inc., Nora Green, Sarah Locklear, and Joseph Howell may pursue their claim for breach of implied warranty and may be counted toward meeting the 100-named plaintiff requirement under the Act.

*Ohio*

■ The following plaintiffs are alleged to have purchased their vehicles· in Ohio: John F. Garbo (¶ 19(I)(b)); Donald L. Kerr (¶ 19(I)(d)); Max C. Traven (¶ 19(II)(i)); Clarence P. Aday (¶ 19(II)(pp)); Charles W. Ingland (¶ 19(II)(eee)); Dock Burkhart (¶ 19(II)(qqq)); Roy V. Barker (¶ 19(II)(vvv)); Jason E. Wilson (¶ 19(II)(yyy)); Arnold Roberts, Sr. (¶ 19(II)(bbbbb)); and Sara J. Knapp (¶ 19(III)(p)).

Defendant asserts that under Ohio law, privity of contract is necessary for breach of an implied warranty under the U.C.C. The cases that Ford cites, however, do not squarely hold that privity is required for claims based on contract law for breach of implied warranty. Those cases hold that "a plaintiff may pursue a cause of action ... in contract where there is privity between plaintiff and defendant." *Lee v. Wright Tool & Forge Co.*, 48 Ohio App.2d 148, 356 N.E.2d 303, 306 (1975); *see also Mahalsky v. Salem Tool Co.*, 461 F.2d 581, 584 (6th Cir.1972) ("Ohio has no remedy for and does not recognize an action in contract absent privity"); *United States Fidelity and Guaranty Co. v. Trucks and Concrete Equipment Co.*, 21 Ohio St.2d 244, 257 N.E.2d 380, 383 (1970) (where a cause of action is based on contract there must be a contractual relationship between plaintiff and defendant). The reasoning in these cases, however, is also applicable to cases involving breaches of implied warranty. Therefore, the Court finds that privity must exist between the parties where there is a claim for breach of warranty, written or implied, that sounds in contract.

Plaintiffs argue that Ohio recognizes an exception to the privity requirement where implied warranty attaches by operation ·of law when a manufacturer gives a written warranty directly to a remote purchaser. In support of this proposition, plaintiffs cite *Eckstein v. Cummins*, 41 Ohio App.2d 1, 321 N.E.2d 897, 901–02 (1974) where Chrysler Motors was held liable for breach of implied warranty under the U.C.C. to a consumer who purchased a vehicle from one of Chrysler's dealers. The court in *Eckstein*, however, principally based this determination on the fact that the president of the dealership stated that the "dealership was an agent for Chrysler Motors Corporation." *Id.* at 901. No agency relationship has been alleged between Ford and its dealers; therefore, the decision in *Eckstein* is not applicable to the present case.

The Court also notes that when the Ohio Supreme Court speaks of "implied warranty," that cause of action sounds only in tort. *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185, 193 (1966); *see also Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 326 N.E.2d 267, 271 (1975) ("an action in tort, based on ... breach of implied warranty, may be maintained to recover for damage to property"). The Court has been unable to find any Ohio Supreme Court cases where an "implied warranty" claim is based in anything other than tort law. Further, when claims for breach of "implied warranty," that sound in tort, are brought, those claims do not require the presence of vertical privity to be actionable. *Lonzrick v. Republic Steel Corp.*, 218 N.E.2d at 192.

If the Court is to accept the presumption that in Ohio "implied warranty" actions arise only in tort law, it must also observe Ohio's statute of limitations for causes of action based in tort for breach of "implied

warranty." The Supreme Court of Ohio in *United States Fidelity and Guaranty Co. v. Truck and Construction Equipment Co.*, 257 N.E.2d at 383 has concluded that the state's two-year statute of limitations period must be applied where the action is in tort based on breach of an "implied warranty." *See also Lee v. Wright Tool and Forge Co.*, 356 N.E.2d at 306. The relevant statute provides in pertinent part that: "An action for ... injuring personal property shall be brought within two years after the cause thereof arose." Ohio Rev. Code § 2305.10 (1981). Therefore, even assuming that claims for breach of implied warranty sound only in tort, all those Ohio plaintiffs whose claims for breach of "implied warranty" arose before August 23, 1979, are barred by the Ohio statute of limitations.

In conclusion, the Court finds that actions for breach of implied warranty that sound in contract require the presence of vertical privity. Further, even assuming *arguendo* that Ohio only requires claims for breach of implied warranty that sound in tort, those claims would be barred by the Ohio statute of limitations. Therefore, John Garbo, Donald Kerr, Max Traven, Clarence Aday, Charles Ingland, Dock Burkhart, Roy Barker, Jason Wilson, Arnold Roberts, and Sara Knapp may not pursue their claims under Count I of the complaint and may not be counted toward satisfying the 100-named plaintiff requirement of the Act.

*Washington*

The following plaintiffs are alleged to have purchased their vehicles in Washington State: R. David Pearsall (¶ 19(I)(aa))[5]; Hazelle B. Richards (¶ 19(II)(g)); Mike and Toni M. Ganey (¶ 19(II)(ooo)); Herbert W. Wright (¶ 19(II)(iiii)) and R.J. and Theda O. Hosking (¶ 19(II)(1111)).

 Defendant asserts that the State of Washington requires the presence of vertical privity to pursue a claim of implied warranty under the U.C.C. The only case that defendant is able to cite in direct support of that assertion is a Federal court decision, *Chance v. Richards Manufacturing Co.*, 499 F.Supp. 102 (E.D.Wash.1980). *Chance* held that "contractual privity is a requirement in Washington for recovery of implied warranties of the Uniform Commercial Code." *Id.* at 105. The district court also noted that:

Under the pre-Code case law, the plaintiff had to establish contractual privity to recover under the implied warranties of the Uniform Sales Act.... Any developments in the case law since the enactment of the Uniform Commercial Code have restricted and not enlarged vertical privity.... Absent any perception of a contrary development, this Court will not abolish the traditional privity requirement in implied warranty actions under the Uniform Commercial Code.... Such a development is best left to the Washington Legislature and the Washington Supreme Court.

*Id.* (citations omitted). The district court admitted that the Supreme Court of Washington has not specifically addressed the question of whether privity is required in order to pursue claims for breach of implied warranty. *Id.* at 104. It notes, however, that in *Berg v. General Motors Corp.*, 87 Wash.2d 584, 555 P.2d 818 (1976), the Supreme Court of Washington stated that:

there are three theories of recovery (warranty, negligence and strict liability) each with their own respective limitations (privity, foreseeability and personal or property damage). *Berg v. General Motors Corp.*, ... 555 P.2d at 823. The Code was in effect when the *Berg* court stated that privity was a limitation on a warranty theory."

*Chance v. Richards Manufacturing Co.*, 449 F.Supp. at 104.

Plaintiffs have argued that Washington State recognizes a "third-party benefi-

---

**5.** Plaintiff Pearsall resides in the State of Washington. He purchased his vehicle at Hilburn-Pauley Ford, Inc. The complaint fails to note where Hilburn-Pauley Ford is located, but the Court presumes that the dealer is located in Washington State.

ciary" exception to the vertical privity requirement. *See Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wash.2d 153, 422 P.2d 496, 503 (1967). That case, however, is inapposite because what is alleged is far greater involvement and participation by the manufacturer in the sale of goods to the purchaser than what is alleged here. Plaintiffs also cite to *World Wide Lease, Inc. v. Grobschmit*, 21 Wash.App. 537, 586 P.2d 889, 892–93 (1978) as support for the "third-party beneficiary" exception. That case, however, involved a warranty of fitness and there were direct dealings between the manufacturer and the user. *Id.* at 893.

Based on the above, the Court concludes that vertical privity is required in Washington when pursuing claims for breach of implied warranty under the U.C.C.[6] Therefore, plaintiffs David Pearsall, Hazelle Richards, Mike and Toni Ganey, Herbert Wright, and R.J. and Theda Hosking may not pursue their claims for breach of implied warranty and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

*Wisconsin*

The following plaintiffs are alleged to have purchased their vehicles in Wisconsin: Kathleen J. and Carlo Campione (¶ 19(I)(c)); Ruth H. Simning (¶ 19(I)(f)); Gerald and Amy Pedersen (¶ 19(II)(e)); David H. Sebora (¶ 19(II)(v)); Stanley P. Mindock (¶ 19(II)(ff)); Eagle River Nursing Home, Inc. (¶ 19(II)(ggg)); Jerome A. Eureti (¶ 19(II)(kkkk)); Ione A. Bazen (¶ 19(II)(pppp)); and Doris W. Forster (¶ 19(II)(wwww)).

 It is without debate that Wisconsin requires privity of contract in order to maintain an action for breach of implied warranty. *LaCrosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis.2d 38, 240 N.W.2d 124, 125 (1976). Therefore, plain-

tiffs Kathleen and Carlo Campione, Ruth H. Simning, Gerald and Amy Pedersen, David Sebora, Stanley Mindock, Eagle River Nursing Home, Inc., Jerome Eureti, Ione Bazen, and Doris Forster may not pursue their claims for breach of implied warranty and may not be counted toward meeting the 100-named plaintiff requirement under the Act.

For the reasons stated above, those plaintiffs who purchased their vehicles in Alabama, Arizona, California, Connecticut, Illinois, Indiana, New Jersey, New York, Ohio, Washington, and Wisconsin may not pursue their implied warranty claims and those claims are therefore dismissed.

### D. Written Warranty Claims

[29] Count II of the complaint alleges that "Ford is in violation of the Act, 15 U.S.C. § 2310(d)(1), for breach of written warranty, for which Ford is liable to … plaintiffs…. Plaintiffs' Complaint at ¶ 38.

Defendant seeks to dismiss those plaintiffs: (1) who fail to allege any problem with Ford transmissions during the warranty period and (2) who fail to allege that they presented their vehicles for service.

As to those plaintiffs who fail to allege a problem with their Ford transmission during the warranty period, Ford argues that in order to be liable for breach of a written warranty, the alleged transmission defect must have occurred prior to the expiration of the written warranty. Ford looks to the *express terms of its written warranty* as support for this proposition. The warranty provides:

> Ford warrants for its … cars and light trucks operated under normal use in the U.S. and Canada that the selling dealer will repair, replace, or adjust free any parts, except tires, found to be defective in factory materials or workmanship within the earlier of 12 months or 12,000

---

**6.** The Court observes that in Washington, where an action arises from breach of an implied contract warranty, the applicable limitations period is three years from the date of actual breach. Wash.Rev.Code 4.16.080(3); *see also Daughtry v. Jet Aeration Co.*, 91 Wash.2d 704,

592 P.2d 631, 633 n. 1 (Wash.1979). Therefore, even if Washington State did not require vertical privity for a claim of breach of implied warranty, all but Hazelle Richards would be barred from pursuing such claims because of the three-year limitations period.

miles from either first use or retail delivery.

Ford 1978 Warranty, Motion to Dismiss Second Amended Complaint, Appendix, Tab F ("Ford Warranties").[7] Ford argues that by looking at the express language of the warranty, it is plain that Ford warranted that only those parts defective in "factory materials or workmanship" would be serviced if the vehicle malfunctioned during the warranty period and the owner sought warranty service from a Ford dealer before the warranty expired. *Id.*

In response, plaintiffs have argued that the terms of the warranty do not state that a defect must manifest itself within the warranty period. The transmission defect, plaintiffs assert, was present during the warranty period, but it merely did not manifest itself until long after the terms of the warranty expired. Therefore, it is reasonable to conclude, plaintiffs argue, that all latent defects, whether known prior to or after the expiration of the written warranty, are covered under the provisions of the said warranty.

The Court is not persuaded by plaintiffs' argument. A number of courts have held that, despite an argument of latent defects by the consumer-plaintiff, a warranty that is limited to 12 months/12,000 miles covers only those defects that are discovered in that period of time. In *Taterka v. Ford Motor Co.*, 86 Wis.2d 140, 271 N.W.2d 653, 657 (1978), the Supreme Court of Wisconsin, in interpreting a Ford warranty substantially the same as the warranties at issue here, noted that: "Ford's warranty does not cover all manufacturing defects. It only covers those discoverable within 12 months or 12,000 miles. The buyer is to bear the risk of repairs beyond that point." *Id. Accord Broe v. Oneonta Sales Co.*, 100 Misc.2d 1099, 420 N.Y.S.2d 436, 437 (Ostego Co. 1978) (court interpreting a similar Ford warranty, limited claims to those problems which had manifested themselves

within the warranty period). In *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 13 U.C.C.R.S. 55, 59 (Tenn.Ct.App.), *affd. in relevant part*, 511 S.W.2d 690 (Tenn.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974), the Tennessee Court of Appeals, in interpreting a warranty substantially similar to the warranties at issue here noted that: "[t]he warranty actually provides for repair or replacement of certain parts 'found to be defective' within the limited period ... [where] no such discovery within the limited period was made ... plaintiff has no valid claim of breach of express ... warranty." *Id.* at 59, 533 S.W.2d 295.

In conclusion, to hold that all latent defects are covered under the written warranty, whether they become apparent to the customer before or after the expiration of the written warranty, would place an undue burden on the manufacturer. Ford would, in effect, be obliged to insure that a vehicle it manufactures is defect-free for its entire life. The Court cannot accept such a drastic interpretation of the plain language of the warranty. Therefore, fifty-seven plaintiffs who fail to allege transmission malfunctions within the warranty period may not assert written warranty claims and therefore may not be counted toward meeting the 100-named plaintiff requirement under Magnuson-Moss.[8]

■■■ Ford also argues that in order for it to be in breach of its written warranty a plaintiff must have presented their vehicles to authorized Ford dealers within the written warranty period and have been refused such warranty service. Ford's 1978 Warranty states in pertinent part:

All we require is that you properly operate and maintain your vehicle and that you return for warranty service to your Selling Dealer or any Ford or Lincoln-Mercury Dealer if you are traveling, have moved a long distance or need emergency repairs. Warranty repairs

---

7. Although the Court quotes only from the 1978 Warranty, the language in the warranties from 1976–1980 are essentially the same. *See* Ford Warranties.

8. The plaintiffs that fail to allege transmission malfunctions within the warranty period are listed in Appendix C–1.

will be made with Ford Authorized Service or Remanufactured Parts.

Ford's Warranty; *see* note 8, *supra.* Ford claims that only after such presentation by an owner could Ford have breached its obligation under the written warranty. In support, defendant cites to *Broe v. Oneonta Sales Co.,* 420 N.Y.S.2d at 437, which provides that a plaintiff must present his or her vehicle to the dealer for repairs during the warranty period before the manufacturer may be liable for breach of written warranty. *Accord Arnold v. Ford Motor Co.,* 90 N.M. 549, 566 P.2d 98, 99 (1977).

By reading the complaint it is plain that numerous plaintiffs failed to present their vehicles to Ford in accordance with the terms of the warranty. Normally, the failure to comply with such presentment requirements constitutes a failure to state a claim for breach of written warranty.

The Court, however, is cognizant of the fact that numerous plaintiffs who approached Ford or its dealers during the warranty period were told that the problems they experienced were the result of "driver error" and that nothing could be done. Surely, defendant cannot now argue that those same plaintiffs should not have a legitimate claim for breach of written warranty. The Court finds that those plaintiffs who complained to Ford in a timely fashion and were turned away, may assert a claim for breach of written warranty because they justifiably relied on Ford's assertions and conduct and honestly believed that they neither had a claim for warranty service or were required to present their vehicles to proceed with such a claim. The Court must conclude that Ford is estopped from asserting a blanket defense of presentment. *See generally,* 3A *Corbin on Contracts,* § 767 (1960 and Kaufman Supp., 1982). Therefore, only those plaintiffs who failed to present their vehicles or complain to Ford or its dealers until long after the warranty period are barred from pursuing written warranty

9. Those plaintiffs are listed in Appendix C–2.

claims and those claims must be dismissed. Therefore, eight plaintiffs' written warranty claims must be dismissed and cannot be counted towards meeting the 100-named plaintiff requirement under the Act.[9]

The Court notes that it has already excluded those duplicative and triplicative plaintiffs for counting purposes under Magnuson-Moss, *see supra* at 13, et. seq. In addition, under the written warranty claim of Count II, where warranty service is the sole remedy available for such a claim, those plaintiffs who are nonowners, *i.e.,* spouses and insurance companies, may not enforce written warranty claims where the owner is already pursuing such claims.

### IV

In determining whether plaintiffs have satisfied the 100-named plaintiff requirement of the Act, defendant asserts that plaintiffs must have at least 100-named plaintiffs in each count in order to satisfy the jurisdictional requirements of the Act. Ford argues that only if plaintiffs are able to assemble 100-named plaintiffs in the written warranty claim of Count I or 100-named plaintiffs in the written warranty claim of Count II would the Court have jurisdiction over this matter. Defendant notes that these claims are fundamentally distinct from each other and, therefore, may not be combined in order to satisfy the jurisdictional threshold of the Act. In support, defendant notes the underlying differences in the two theories of recovery and cites to some legislative history. *See* H.R. Rep. No. 93–1107, 93d Cong., 2d Sess. 23, *reprinted in* 1974 U.S.Code Cong. & Ad. News 7702, 7724. Finally, defendant notes that the Fourth Circuit in *Saval v. BL Ltd.,* 710 F.2d at 1030, affirmed a district court's refusal to join dissimilar claims, thus preventing plaintiff from satisfying the Act's $50,000 amount-in-controversy requirement. *See* 15 U.S.C. § 2310(d)(3)(B).

Although the Court agrees that claims for breach of implied warranty and

written warranty are separate and distinct causes of action, it fails to see why that would require a plaintiff to assemble 100 or more individuals *on each claim*, before jurisdiction would take hold. Further, the Court has examined the legislative history cited by Ford and concludes that it does not compel this Court to find that each claim must have 100 plaintiffs. Finally, the reasoning in *Saval* is not dispositive on this question. The Court of Appeals for the Fourth Circuit prevented plaintiffs in that case from assembling "completely unrelated claims" to satisfy the $50,000 monetary claim requirement. That court noted that the district "court found that [plaintiffs] had 'not demonstrated that any of the alleged similar problems resulted from a common defect'" in the cars. *Id.* at 1031 (citation omitted). It therefore concluded that plaintiffs could not aggregate their claims to meet the monetary jurisdictional threshold because they did not allege a common defect. *Id.* at 1031–32. What plaintiffs allege here is a common defect, *i.e.*, defective transmission that results in park-to-reverse incidents. Their claims are based on either breach of implied or written warranty. To extend the reasoning in *Saval* far beyond the facts present in that case would be to convert the strict jurisdictional provisions of the Act designed "to avoid minor actions being brought as class actions in Federal district courts", *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. at 543, into a barrier that no class of plaintiffs could ever overcome. Therefore, the Court will not extend the *Saval* holding to the present facts.

The Court notes that the statute plainly provides that no claim may be brought in Federal court "if the action is brought as *a class action*, and the number of plaintiffs named is less than one hundred." 15 U.S.C. § 2310(d)(3)(C) (emphasis added). The statute definitively requires that there be 100-named plaintiffs per "class action"

and not per "Count." Therefore, when counting the number of plaintiffs to determine whether they have satisfied the Act's jurisdictional requirements, the Court will look to both Counts in the complaint to determine whether 100-named plaintiffs have been assembled.[10]

In counting the number of plaintiffs that have stated claims for relief and therefore survive the motion to dismiss, the Court finds that 106 plaintiffs may pursue the Magnuson-Moss claim of Counts I and II.[11] Therefore, plaintiffs have satisfied the 100-named plaintiff requirement under Magnuson-Moss and defendant's motion to dismiss is denied.

### APPENDIX A

The following plaintiffs listed in the complaint allege related claims on a single Ford product and, therefore, may be counted only once when establishing the 100-plaintiff requirement under Magnuson-Moss.

(1) John F. "Jack" Walsh and Employers Casualty Company (¶ 19(I)(a))

(2) John F. and Joyce A. Garbo and Painters Insurance Fund (¶ 19(I)(b))

(3) Kathleen J. and Carlo Campione (¶ 19(I)(c))

(4) Donald L. and Evelyn J. Kerr and Grange Mutual Casualty Company (¶ 19(I)(d))

(5) Jacob L. and Agnes R.M. Slemmer (¶ 19(I)(g))

(6) George C. Dunnells and Hanover Insurance Companies (¶ 19(I)(h))

(7) John J. Godbold and Pennsylvania National Mutual Casualty Company (¶ 19(I)(i))

(8) Eileen H. Thoubboron and Amica Mutual Insurance Company (¶ 19(I)(q))

(9) Harry V. and Cynthia A. Shilvock (¶ 19(I)(x))

---

**10.** *See* Appendix D.

**11.** Those plaintiffs who survived the motion to dismiss second amended complaint are listed in Appendix E.

(10) Nola B. Whitley and B & W Grain, Inc. (¶ 19(II)(a))

(11) The Ole' Black Kettle Restaurant, Inc. and Philip N. Derosia (¶ 19(II)(b))

(12) James E. and Lillian A. Cepek (¶ 19(II)(c))

(13) Gerald and Amy Pedersen (¶ 19(II)(e))

(14) Judith A. and Mildred Rosenthal (¶ 19(II)(f))

(15) Hazelle B. Richards and State Farm Insurance Company (¶ 19(II)(g))

(16) Max C. and JoAnn Traven (¶ 19(II)(i))

(17) Phyllis M. and Kenneth H. Stacy and Blue Cross and Blue Shield of Delaware (¶ 19(II)(j))

(18) Thomas A. and Alice L. Burns (¶ 19(II)(k))

(19) John G. and Joy L. Seidl (¶ 19(II)(o))

(20) Dennis L. and Linda S. Bugbee (¶ 19(II)(p))

(21) R.J. and Elizabeth G. Anderson (¶ 19(II)(r))

(22) Menorah Chapels at Milburn, Inc. and Herbert Ross (¶ 19(II)(s))

(23) Jerry and Elizabeth L. Portwood (¶ 19(II)(t))

(24) Harry A. and Virginia M. Seroka (¶ 19(II)(u))

(25) Glenn E. and Doris V. Sayles (¶ 19(II)(x))

(26) Raymond B. Doutt and Nationwide Insurance Company (¶ 19(II)(z))

(27) Lawrence D. Von Behren and Shelter Insurance Companies (¶ 19(II)(dd))

(28) David R. and Jeannie S. Wingerter (¶ 19(II)(ee))

(29) Rhoda E. Rosenblum and Continental Insurance Companies (¶ 19(II)(kk))

(30) Gregory R. and Cynthia M. Maschmeyer (¶ 19(II)(mm))

(31) Robert D. Wilson and Maine Bonding & Casualty Company (¶ 19(II)(rr))

(32) David M. Rupp and Farmers Union Insurance Company (¶ 19(II)(ss))

(33) Estate of William W. Buckingham and Donna B. Klemm (¶ 19(II)(xx))

(34) William A. and Clara E. Collins (¶ 19(II)(yy))

(35) Horace T. and Elizabeth M. Sullivan (¶ 19(II)(hhh))

(36) Arnold F. Mitch and Farmers Insurance Group (¶ 19(II)(lll))

(37) Mike and Toni M. Ganey (¶ 19(II)(ooo))

(38) James L. and Nan J. Gerber (¶ 19(II)(sss))

(39) Franklin L. and Darlene E. McKnight (¶ 19(II)(ttt))

(40) Roy V. Barker and Economy Fire and Casualty Company (¶ 19(II)(vvv))

(41) Frederick R. and Leonie B. Schroeder (¶ 19(II)(aaaa))

(42) Billy A. and Edith M. Foster (¶ 19(II)(cccc))

(43) R.J. and Theda O. Hosking (¶ 19(II)(llll))

(44) Gordon E. Critoph and Crum & Foster Insurance Companies (¶ 19(II)(oooo))

(45) Radcliffe H. and Lillian T. Smith (¶ 19(II)(yyyy))

(46) Steve W. and Joyce A. Bolton (¶ 19(III)(g))

(47) Cleveland and Betty J. Bias (¶ 19(III)(h))

(48) Kenneth L. and Martha A. Enders (¶ 19(III)(i))

(49) Quentin P. and Elizabeth M.A. Tuggle (¶ 19(III)(m))

(50) Bruce P. and Nancy E. DiDonato (¶ 19(III)(o))

## APPENDIX B

The following plaintiffs listed in the complaint are pursuing warranty claims for

vehicles which were purchased prior to August 21, 1977. The plaintiffs listed below have also alleged transmission incidents or complained to Ford or its dealers on or after October 1977. These plaintiffs' warranty claims must be dismissed because of the statute of limitations bar and they may not be counted towards meeting the 100-named plaintiff requirement under Magnuson-Moss.

(1) John F. and Joyce A. Garbo and Painters Insurance Fund (¶ 19(I)(b))

Vehicle purchased on May 6, 1977. The alleged incident occurred on September 21, 1978, after the NHTSA investigation had begun.

(2) Mary Jo Smith (¶ 19(I)(e))

Vehicle purchased on October 15, 1976. The alleged incident occurred in July 1978, after the NHTSA investigation had begun.

(3) George C. Dunnells and Hanover Insurance Companies (¶ 19(I)(h))

Vehicle purchased on July 19, 1977. The alleged incident occurred on October 4, 1978, after the NHTSA investigation had begun.

(4) Patricia E. Newberry (¶ 19(I)(t))

Vehicle purchased on July 31, 1977. The alleged incident occurred on March 3, 1978, after the NHTSA investigation had begun.

(5) Kenneth J. Dombrowski (¶ 19(I)(u))

Vehicle purchased on December 16, 1976. The alleged incident occurred on June 17, 1978, after the NHTSA had begun.

(6) R. David Pearsall (¶ 19(I)(aa))

Vehicle purchased on April 21, 1977. The alleged incident that led plaintiff to complain to NHTSA occurred on March 11, 1978, after the NHTSA investigation had begun. No contact with Ford or its dealer alleged.

(7) Robert C. McIntyre (¶ 19(I)(dd))

Vehicle purchased on March 9, 1976. The alleged incident that led plaintiff to complain to Ford dealer occurred in January 1978, after the NHTSA investigation had begun.

(8) Ole' Black Kettle Restaurant, Inc. and Philip N. Derosia (¶ 19(II)(b)).

Purchased a used 1977 Ford van. The alleged incident occurred on June 29, 1981, after the NHTSA investigation had begun.

(9) James E. and Lillian A. Cepek (¶ 19(II)(c))

Vehicle purchased on July 30, 1977. The alleged incident occurred on October 12, 1977. Contact with Ford on December 13, 1977, after the NHTSA investigation had begun.

(10) Hazelle B. Richards and State Farm Insurance Company (¶ 19(II)(g))

Purchased a used 1977 Ford car. The alleged incident occurred on January 12, 1981, after the NHTSA investigation had begun.

(11) Phyllis M. and Kenneth H. Stacy and Blue Cross and Blue Shield of Delaware (¶ 19(II)(j))

Purchased a used 1977 Ford car. The alleged incident occurred on September 14, 1979, after the NHTSA investigation had begun.

(12) Cecil L. Crowe (¶ 19(II)(1))

Vehicle purchased on April 8, 1977. The alleged incident occurred on September 20, 1977. Contact with Ford dealer after the NHTSA investigation had begun.*

(13) Fred E. Baca (¶ 19(II)(m))

Purchased a used 1976 Ford van. The alleged incident occurred on July 20, 1978, after the NHTSA investigation had begun.

(14) R.J. and Elizabeth G. Anderson (¶ 19(II)(r))

Purchased a used 1977 Ford car on August 14, 1977. The alleged incident oc-

---

* No date given in the complaint. The Court, however, presumes that plaintiff Crowe approached his Ford dealer after NHTSA had begun its investigation.

curred on April 6, 1978, after the NHTSA investigation had begun.

(15) Jerry and Elizabeth L. Portwood (¶ 19(II)(t))

Vehicle purchased on April 12, 1977. The alleged incident that led plaintiff to complain to their dealer occurred in November 1977, after the NHTSA investigation had begun.

(16) Debra A. Walsh (¶ 19(II)(aa))

Vehicle purchased on July 26, 1977. The alleged incident occurred on September 8, 1978, after the NHTSA investigation had begun.

(17) Lawrence D. Von Behren and Shelter Insurance Companies (¶ 19(II)(dd))

Vehicle purchased on March 16, 1977. The alleged incident occurred in January 14, 1982, after the NHTSA investigation had begun.

(18) Earl F. Brubeck (¶ 19(II)(ii))

Vehicle purchased in May 1977. The alleged incident occurred on November 22, 1978, after the NHTSA investigation had begun.

(19) Helen O. Howland (¶ 19(II)(ll))

Vehicle purchased on July 14, 1977. The alleged incident occurred on November 3, 1977, after the NHTSA investigation had begun.

(20) Donna L. Lempka (¶ 19(I)(nn))

Vehicle purchased on August 15, 1977. The alleged incident occurred on June 16, 1978, after the NHTSA investigation had begun.

(21) Clarence P. Aday (¶ 19(II)(pp))

Vehicle purchased on May 14, 1977. The alleged incident occurred on September 6, 1978, after the NHTSA investigation had begun.

(22) Lawrence B. Miller (¶ 19(II)(uu))

Vehicle purchased on April 8, 1977. The alleged incident occurred on April 12, 1978, after the NHTSA investigation had begun.

(23) William A. and Clara Collins (¶ 19(II)(yy))

Purchased a used 1977 Ford car. The first alleged incident occurred on February 2, 1978, after the NHTSA investigation had begun.

(24) Patricia G. Lee (¶ 19(II)(bbb))

Vehicle purchased on July 1, 1977. The alleged incident occurred on December 12, 1978, after the NHTSA investigation had begun.

(25) Sarah C. Cromer (¶ 19(II)(ddd))

Vehicle purchased on August 17, 1977. The alleged incident occurred on October 18, 1977, after the NHTSA investigation had begun.

(26) Horace T. and Elizabeth M. Sullivan (¶ 19(II)(hhh))

Vehicle purchased on April 28, 1977. The alleged incident occurred on June 11, 1978, after the NHTSA investigation had begun.

(27) Mike and Toni M. Ganey (¶ 19(II)(ooo))

Vehicle purchased on October 20, 1976. The alleged incident occurred on November 4, 1977, after the NHTSA investigation had begun.

(28) Ernest E. Minch (¶ 19(II)(ppp))

Vehicle purchased on February 25, 1977. The alleged incident occurred on December 31, 1978, after the NHTSA investigation had begun.

(29) Franklin L. and Darlene E. McKnight (¶ 19(II)(ttt))

Vehicle purchased on August 8, 1977. The alleged incident occurred on March 31, 1978, after the NHTSA investigation had begun.

(30) George Pradarits (¶ 19(II)(uuu))

Purchased a used 1977 Ford car. The alleged incident occurred "[o]n or about March 15, 1981 ..." after the NHTSA investigation had begun.

(31) George E. McInnis (¶ 19(II)(xxx))

Purchased a used 1976 Ford van on May 1, 1976. The alleged incident occurred on January 19, 1979, after the NHTSA investigation had begun.

(32) Billy A. and Edith M. Foster (¶ 19(II)(cccc))

Vehicle purchased May 19, 1977. The alleged incident occurred on February 27, 1978, after the NHTSA investigation had begun.

(33) Tindell F. Tyler (¶ 19(II)(jjjj))

Vehicle purchased on June 11, 1977. The alleged incident occurred on July 13, 1978, after the NHTSA investigation had begun.

(34) R.J. and Theda O. Hosking (¶ 19(II)(llll))

Vehicle purchased on August 6, 1977. The alleged incident occurred "in the spring of 1978," after the NHTSA investigation had begun.

(35) Lawrence R. Jauch (¶ 19(II)(ssss))

Vehicle purchased on August 9, 1977. The alleged incident occurred on May 7, 1978, after the NHTSA investigation had begun.

(36) Vincent Agnifilo (¶ 19(II)(vvvv))

Vehicle purchased in August 1976. The alleged incident occurred in September 1978, after the NHTSA investigation had begun.

(37) Everett Poggi (¶ 19(III)(c))

Vehicle purchased on February 23, 1977. The alleged incident occurred in February 1978, after the NHTSA investigation had begun.

(38) Cleveland and Betty J. Bias (¶ 19(III)(h))

Vehicle purchased on October 1, 1976. First complained to Ford on September 15, 1978, after the NHTSA investigation had begun.

(39) John R. Samples (¶ 19(III)(l))

Vehicle purchased on July 2, 1977. First contact with Ford after March 3, 1979, after the NHTSA investigation had begun.

(40) Bruce P. and Nancy E. DiDonato (¶ 19(III)(o))

Vehicle purchased on October 26, 1976. The alleged incident occurred in July 1979, after the NHTSA investigation had begun.

(41) Sara J. Knapp (¶ 19(III)(p))

Vehicle purchased on January 14, 1977. The alleged incident occurred "[i]n the fall of 1978," after the NHTSA investigation had begun.

(42) Adrienne C. Thurston (¶ 19(III)(r))

Vehicle purchased on February 28, 1977. The alleged incident occurred in January 1979, after the NHTSA investigation had begun.

(43) Baby Ruth Henry (¶ 19(III)(u))

Vehicle purchased on March 24, 1977. The alleged incident occurred on November 4, 1978, after the NHTSA investigation had begun.

APPENDIX C–1

The following plaintiffs' Count II written warranty claims are dismissed because they fail to allege any problems with Ford transmissions within the 12-month/12,000-mile written warranty period.

1. John F. Garbo, (¶ 19(I)(b))

Only alleged incident occurred 16 months after purchase, "at a mileage of approximately 18,950."

2. Kathleen J. and Carlo Campione, (¶ 19(I)(c))

Only alleged incident occurred "at a milage of approximately 22,000."

3. Mary Jo Smith, (¶ 19(I)(e))

Only alleged incident occurred 21 months after purchase, "at a mileage of approximately 30,000."

4. George C. Dunnells, (¶ 19(I)(h))

Only alleged incidents occurred at mileages in excess of 40,000. This vehicle was purchased used, and the warranty on it had expired prior to purchase by this plaintiff.

5. John J. Godbold, (¶ 19(I)(i))

Only alleged incident occurred 37 months after purchase, "at a mileage of approximately 20,000."

6. Kay Planting Company, (¶ 19(I)(n))

Only alleged incident occurred 29 months after purchase, "at a mileage of approximately 71,000."

7. Eileen H. Thoubboron, (¶ 19(I)(q))

Only alleged incident occurred 39 months after purchase, "at a mileage of approximately 43,000."

8. Kenneth J. Dombrowski, (¶ 19(I)(u))

Only alleged incident occurred 18 months after purchase, "at a mileage of 23,082."

9. Harry V. and Cynthia A. Shilvock, (¶ 19(I)(x))

Only alleged incident occurred 24 months after purchase, "at a mileage of approximately 14,000."

10. Robert C. McIntyre, (¶ 19(I)(dd))

Alleges no incidents within the written warranty period. Plaintiff alleges two incidents "in about 1977," but there is no indication that the warranty was still in effect at those times.

11. B & W Grain, Inc., (¶ 19(II)(a))

Only alleged incident occurred 37 months after purchase, at a mileage of approximately 44,000.

12. Ole' Black Kettle Restaurant, Inc., (¶ 19(II)(b))

Only alleged incident occurred at a mileage of approximately 47,000. This vehicle was purchased used, and the warranty on it had expired prior to purchase.

13. Hazelle B. Richards, (¶ 19(II)(g))

Only alleged incident occurred 37 months after purchase, "at a mileage of approximately 35,900." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

14. Phyllis M. and Kenneth H. Stacy, (¶ 19(II)(j))

Only alleged incident occurred "at a mileage of approximately 28,000." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

15. Fred E. Baca, (¶ 19(II)(m))

First alleged incident occurred at a mileage of more than 21,847. This vehicle was purchased used, and the warranty on it had expired prior to purchase.

16. Francis D. Johnstone, (¶ 19(II)(n))

Only alleged incident occurred 19 months after purchase, "at a mileage of 22,284."

17. John G. and Joy L. Seidl, (¶ 19(II)(o))

Only alleged incident occurred about two years after purchase.

18. Nora Green, (¶ 19(II)(q))

Only alleged incident occurred over 24 months after purchase, "at a mileage of 41,492."

19. R.J. and Elizabeth G. Anderson, (¶ 19(II)(r))

Only alleged incident occurred "at a mileage of approximately 16,590." This vehicle was purchased used, and the warranty on it expired prior to purchase.

20. David H. Sebora, (¶ 19(II)(v))

Only alleged incident occurred "at a mileage of 14,980."

21. Vivian B. Gey, (¶ 19(II)(y))

Only alleged incident occurred 13 months after purchase.

22. Debra A. Walsh, (¶ 19(II)(aa))

Only alleged incident occurred 13½ months after purchase.

23. Lawrence D. Von Behren, (¶ 19(II)(dd))

Only alleged incident occurred almost 5 years after purchase, "at a mileage of 29,363."

24. David R. and Jeannie S. Wingerter, (¶ 19(II)(ee))

First alleged incident occurred "at a mileage of approximately 13,000."

25. Joan I. Pearson, (¶ 19(II)(gg))

Only alleged incident occurred "at a mileage of approximately 23,400."

26. Earl F. Brubeck, (¶ 19(II)(ii))

Only alleged incident occurred 18 months after purchase, "at a mileage of approximately 30,000."

27. Rhoda E. Rosenblum, (¶ 19(II)(kk))

Only alleged incident occurred 35 months after purchase, "at a mileage of approximately 28,000."

28. Gregory R. and Cynthia Maschmeyer, (¶ 19(II)(mm))

Only alleged incident occurred "at a mileage of approximately 12,000." Plaintiffs do not allege nor is there any indication that the incident took place within the warranty period.

29. Clarence P. Aday, (¶ 19(II)(pp))

Only alleged incident occurred 16 months after purchase.

30. Floyd E. Flood, (¶ 19(II)(tt))

Only alleged incident occurred 49 months after purchase.

31. Lawrence B. Miller, (¶ 19(II)(uu))

Only alleged incident occurred more than 12 months after purchase.

32. Kenyon L. Sweitzer, (¶ 19(II)(vv))

Only alleged incident occurred "at a mileage of approximately 48,000." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

33. Donna B. Klemm, (¶ 19(II)(xx))

Plaintiff Klemm became the owner of the vehicle almost three years after its original sale, after the warranty had expired. Plaintiff alleges no incidents with the vehicle during her period of ownership.

34. William A. and Clara E. Collins, (¶ 19(II)(yy))

First alleged incident occurred "at a mileage of approximately 17,000." The vehicle was purchased used.

35. Patricia G. Lee, (¶ 19(II)(bbb))

Only alleged incident occurred 17 months after purchase, "at a mileage of approximately 15,300."

36. Eagle River Nursing Home, Inc., (¶ 19(II)(ggg))

First alleged incident occurred "at a mileage of approximately 17,500."

37. Horace T. and Elizabeth M. Sullivan, (¶ 19(II)(hhh))

Only alleged incident occurred 14 months after purchase "at a mileage of approximately 12,000."

38. William J. Davis, (¶ 19(II)(kkk))

Only alleged incident occurred 17 months after purchase, "at a mileage of approximately 19,000."

39. Mike and Toni M. Ganey, (¶ 19(II)(ooo))

Only alleged incident occurred 13 months after purchase, "at a mileage of 15,704."

40. Ernest E. Minch, (¶ 19(II)(ppp))

First alleged incident occurred 22 months after purchase.

41. George Pradarits, (¶ 19(II)(uuu))

Only alleged incident occurred "at a mileage of 38,969." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

42. George E. McInnis, (¶ 19(II)(xxx))

Only alleged incident occurred "at a mileage of approximately 57,000." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

43. Harold W. Whitford, (¶ 19(II)(ffff))

First alleged incident occurred "at a mileage of 15,191."

44. Betsy A. Aird, (¶ 19(II)(gggg))

First alleged incident occurred "at a mileage of approximately 30,000."

45. Tindell F. Tyler, (¶ 19(II)(jjjj))

First alleged incident occurred 13 months after purchase, "at a mileage of approximately 18,000."

46. James W. Knapp, (¶ 19(II)(tttt))

Only alleged incident occurred "at a mileage of approximately 45,000." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

47. Vincent Agnifilo, (¶ 19(II)(vvvv))

First alleged incident occurred 25 months after purchase, "at a mileage of approximately 16,000."

48. Doris W. Forster, (¶ 19(II)(wwww))

First alleged incident occurred "at a mileage of approximately 15,000."

49. Ypsilanti True Value Hardware, Inc., (¶ 19(II)(zzzz))

Only alleged incident occurred 26 months after purchase.

50. Everett Poggi, (¶ 19(III)(c))

First alleged incident occurred "at a mileage of approximately 30,000." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

51. David W. Matthews, (¶ 19(III)(k))

First alleged incident occurred "at a mileage of approximately 32,675." This vehicle was purchased used, and the warranty on it had expired prior to purchase.

52. Quentin P. and Elizabeth M.A. Tuggle, (¶ 19(III)(m))

First alleged incident occurred 22 months after purchase, "at a mileage of approximately 40,000."

53. Bruce P. and Nancy E. DiDonato (¶ 19(III)(o))

First alleged incident occurred 33 months after purchase, "at a mileage of approximately 21,000."

54. Sara J. Knapp, (¶ 19(III)(p))

Only alleged incident occurred approximately 21 months after purchase, "at a mileage of approximately 14,400."

55. Joseph H. Howell, (¶ 19(III)(q))

Only alleged incident occurred approximately 19 months after purchase, "at a mileage of approximately 18,000."

56. Adrienne C. Thurston, (¶ 19(III)(r))

First alleged incident occurred approximately 24 months after purchase "at a mileage of roughly 14,000."

57. Baby Ruth Henry, (¶ 19(III)(u))

Only alleged incident occurred 20 months after purchase, "at a mileage of approximately 51,300."

## APPENDIX C–2

The following plaintiffs failed to complain to Ford or its dealers about alleged transmission malfunctions until long after the expiration of Ford's written warranty and, therefore, their claims under Count II of the complaint for breach of written warranty must be dismissed:

1. R. David Pearsall, (¶ 19(I)(aa))

Never contacted Ford or dealer after alleged incident occurred. Only allege contact with NHTSA.

2. Juanita P. Opstein, (¶ 19(II)(bb))

Never contacted Ford or dealer after alleged incident occurred.

3. Helen O. Howland, (¶ 19(II)(ll))

Never contacted Ford or dealer after alleged incident occurred.

4. Donald D. Capodanno (¶ 19(II)(fff))

Never contacted Ford or dealer within the warranty period. Only alleged contact occurred long after the alleged incident.

5. Robert Joel (¶ 19(III)(e))

Never contacted Ford or dealer within the warranty period. Only alleged contact occurred long after the alleged incident.

6. Cleveland and Betty J. Bias (¶ 19(III)(h))

Never contacted Ford or dealer within the warranty period. Only alleged contact occurred long after the alleged incident.

7. Gerald J. Marchant (¶ 19(III)(j))

Never contacted Ford or dealer after alleged incident occurred. Only allege contact with NHTSA.

8. John R. Samples (¶ 19(III)(l))

Never contacted Ford or dealer within the warranty period. Only alleged contact occurred long after the alleged incident.

## APPENDIX D

| Plaintiff | Statute of Limitations | Count I | Count II |
|---|---|---|---|
| John F. "Jack" Walsh and Employers Casualty Company (¶ 19(I)(a)) | | | |
| John F. and Joyce A. Garbo and Painters Insurance Fund (¶ 19(I)(b)) | * | * | * |
| Kathleen J. and Carlo Campione (¶ 19(I)(c)) | | * | * |
| Donald L. and Evelyn J. Kerr and Grange Mutual Casualty Company (¶ 19(I)(d)) | | * | |
| Mary Jo Smith (¶ 19(I)(e)) | * | | * |
| Ruth H. Simning (¶ 19(I)(f)) | | * | |
| Jacob L. and Agnes R.M. Slemmer (¶ 19(I)(g)) | | | |
| George C. Dunnells and | * | | * |

| Plaintiff | Statute of Limitations | Count I | Count II |
|---|---|---|---|
| Hanover Insurance Companies (¶ 19(I)(h)) | | | |
| John J. Godbold and Pennsylvania National Mutual Casualty Company (¶ 19(I)(i)) | | | * |
| James T. Kennedy, Jr. (¶ 19(I)(j)) | | | |
| Strick's Motel, Inc. (¶ 19(I)(k)) | | | |
| Gladys M. Griffin (¶ 19(I)(l)) | | | |
| James B. Gilbert (¶ 19(I)(m)) | | | |
| Kay Planting Company (¶ 19(I)(n)) | | | * |
| Irene A. Rooks (¶ 19(I)(o)) | | | |
| Maurice C. Brooks (¶ 19(I)(p)) | | | |
| Eileen H. Thoubboron and Amica Mutual Insurance Company (¶ 19(I) (q)) | | | * |
| Foster A. Guffey (¶ 19(I)(r)) | | | |
| Martha D. Meidinger (¶ 19(I)(s)) | | * | |
| Patricia E. Newberry (¶ 19(I)(t)) | * | * | |
| Kenneth J. Dombrowski (¶ 19(I)(u)) | * | | * |
| Raymond W. Albertson III (¶ 19(I)(v)) | | | |
| Harold G. Soladay (¶ 19(I)(w)) | | * | |
| Harry V. and Cynthia A. Shilvock (¶ 19(I)(x)) | | | * |
| Lawrence W. Greene (¶ 19(I)(y)) | | | |
| Michael J. Wortman (¶ 19(I)(z)) | | | |
| R. David Pearsall (¶ 19(I)(aa)) | * | * | * |
| Randy L. Bunnell (¶ 19(I)(bb)) | | | |
| Peter J. Benedetti (¶ 19(I)(cc)) | | | |
| Robert C. McIntyre (¶ 19(I)(dd)) | * | | * |
| Nola B. Whitley and B & W Grain, Inc. (¶ 19(II)(a)) | | | * |
| The Ole' Black Kettle Restaurant, Inc. and Philip N. Derosia (¶ 19(II)(b)) | * | * | * |
| James E. and Lillian A. Cepek (¶ 19(II)(c)) | * | * | |
| Cully B. Oakes (¶ 19(II)(d)) | | | |
| Gerald and Amy Pedersen (¶ 19(II)(e)) | | * | |
| Judith A. and Mildred Rosenthal (¶ 19(II)(f)) | | * | |
| Hazelle B. Richards and State Farm Insurance Company (¶ 19(II)(g)) | * | * | * |
| Mildred E. Smith (¶ 19(II)(h)) | | * | |
| Max C. and JoAnn Traven (¶ 19(II)(i)) | | * | |
| Phyllis M. and Kenneth H. Stacy and Blue Cross and Blue Shield of Delaware (¶ 19(II)(j)) | * | | * |
| Thomas A. and Alice L. Burns (¶ 19(II)(k)) | | * | |
| Cecil L. Crowe (¶ 19(II)(l)) | * | * | |
| Fred E. Baca (¶ 19(II)(m)) | * | | * |
| Francis D. Johnstone (¶ 19(II)(n)) | | | * |
| John G. and Joy L. Seidl (¶ 19(II)(o)) | | | * |
| Dennis L. and Linda S. Bugbee (¶ 19(II)(p)) | | * | |
| Nora Green (¶ 19(II)(q)) | | | * |
| R.J. and Elizabeth G. Anderson (¶ 19(II)(r)) | * | * | * |
| Menorah Chapels at Millburn, Inc. and Herbert Ross (¶ 19(II)(s)) | | * | |
| Jerry and Elizabeth L. Portwood (¶ 19(II)(t)) | * | | |
| Harry A. and Virginia M. Seroka (¶ 19(II)(u)) | | | |
| David H. Sebora (¶ 19(II)(v)) | | * | * |
| Jonathan A. Shatz (¶ 19(II)(w)) | | | |
| Glenn E. and Doris V. Sayles (¶ 19(II)(x)) | | | |
| Vivian B. Gey (¶ 19(II)(y)) | | * | * |
| Raymond B. Doutt and Nationwide Insurance Company (¶ 19(II)(z)) | | | |
| Debra A. Walsh (¶ 19(II)(aa)) | * | | * |
| Juanita P. Opstein (¶ 19(II)(bb)) | | | * |
| John B. Howell (¶ 19(II)(cc)) | | | |
| Lawrence D. Von Behren and Shelter Insurance Companies (¶ 19(II)(dd)) | * | | * |
| David R. and Jeannie S. Wingerter (¶ 19(II)(ee)) | | | * |
| Stanley P. Mindock (¶ 19(II)(ff)) | | * | |
| Joan I. Pearson (¶ 19(II)(gg)) | | | * |
| Janice C. Harper (¶ 19(II)(hh)) | | * | |
| Earl F. Brubeck (¶ 19(II)(ii)) | * | | * |
| Myron L. Riddle (¶ 19(II)(jj)) | | * | |
| Rhoda E. Rosenblum and Continental Insurance Companies (¶ 19(II)(kk)) | | * | * |
| Helen O. Howland (¶ 19(II)(ll)) | * | * | * |
| Gregory R. and Cynthia M. Maschmeyer (¶ 19(II)(mm)) | | | |
| Donna L. Lempka (¶ 19(II)(nn)) | * | | |
| Larry A. Brown (¶ 19(II)(oo)) | | * | |
| Clarence P. Aday (¶ 19(II)(pp)) | * | * | * |
| Harris Nykamp (¶ 19(II)(qq)) | | | |
| Robert D. Wilson and Maine Bonding & Casualty Co. (¶ 19(II)(rr)) | | | |
| David M. Rupp and Farmers Union Insurance Company (¶ 19(II)(ss)) | | | |
| Floyd E. Flood (¶ 19(II)(tt)) | | | * |
| Lawrence B. Miller (¶ 19(II)(uu)) | * | | * |
| Kenyon L. Sweitzer (¶ 19(II)(vv)) | | | * |
| Teresa A. Sutcliffe (¶ 19(II)(ww)) | | | |
| Estate of William W. Buckingham, William J. Engel, Administrator and Donna B. Klemm (¶ 19(II)(xx)) | | | * |

| Plaintiff | Statute of Limitations | Count I | Count II |
|---|---|---|---|
| William A. and Clara E. Collins (¶ 19(II)(yy)) | * | | * |
| William T. Spannagel (¶ 19(II)(zz)) | | * | |
| Jerry L. Borden (¶ 19(II)(aaa)) | | | |
| Patricia G. Lee (¶ 19(II)(bbb)) | * | | * |
| Arthur V Spies (¶ 19(II)(ccc)) | | | |
| Sara C. Cromer (¶ 19(II)(ddd)) | * | * | |
| Charles W. Ingland (¶ 19(II)(eee)) | * | | |
| Donald D. Capodanno (¶ 19(II)(fff)) | | | * |
| Eagle River Nursing Home, Inc. (¶ 19(II)(ggg)) | | * | * |
| Horace T. and Elizabeth M Sullivan (¶ 19(II)(hhh)) | * | | * |
| Ronald P. Dawley (¶ 19(II)(iii)) | | * | |
| Tom Davis Electric Company, Inc. (¶ 19(II)(jjj)) | * | | |
| William J. Davis (¶ 19(II)(kkk)) | | | * |
| Arnold F. Mitch and Farmers Insurance Group (¶ 19(II)(lll)) | | | |
| Sara E. Locklear (¶ 19(II)(mmm)) | | | |
| Glen L Norrington (¶ 19(II)(nnn)) | | | |
| Mike and Toni M. Ganey (¶ 19(II)(ooo)) | * | * | * |
| Ernest E. Minch (¶ 19(II)(ppp)) | * | | * |
| Dock Burkhart (¶ 19(II)(qqq)) | | * | |
| James F. Bingham (¶ 19(II)(rrr)) | | | |
| James L. and Nan J. Gerber (¶ 19(II)(sss)) | | * | |
| Franklin L and Darlene E. McKnight (¶ 19(II)(ttt)) | * | | |
| George Pradarits (¶ 19(II)(uuu)) | * | * | * |
| Roy V. Barker and Economy Fire and Casualty (¶ 19(II)(vvv)) | | * | |
| Vondracek TV Company (¶ 19(II)(www)) | | * | |
| George E. McInnis (¶ 19(II)(xxx)) | * | * | * |
| Jason E. Wilson (¶ 19(II)(yyy)) | | * | |
| Henry W Leeds (¶ 19(II)(zzz)) | | | |
| Frederick R. and Leonie R. Schroeder (¶ 19(II)(aaaa)) | | | |
| Arthur L. Diamond (¶ 19(II)(bbbb)) | | * | |
| Billy A. and Edith M. Foster (¶ 19(II)(cccc)) | * | | |
| Abbot A. Estes (¶ 19(II)(dddd)) | | | |
| Daniel F. Berry, Sr. (¶ 19(II)(eeee)) | | | |
| Harold W. Whitford, Sr. (¶ 19(II)(ffff)) | | * | * |
| Betsy A. Aird (¶ 19(II)(gggg)) | | * | * |
| Patsy Ruth Carter (¶ 19(II)(hhhh)) | | | |
| Herbert W. Wright (¶ 19(II)(iiii)) | | * | |
| Tindell F Tyler (¶ 19(II)(jjjj)) | * | * | * |
| Jerome A. Eureti (¶ 19(II)(kkkk)) | | * | |
| R.J. and Theda O. Hosking (¶ 19(II)(llll)) | * | * | |
| Kenneth E. Turner (¶ 19(II)(mmmm)) | | * | |
| Sheila J. Newton (¶ 19(II)(nnnn)) | | | |
| Gordon E. Critoph and Crum & Foster Insurance Companies (¶ 19(II)(oooo)) | | * | |
| Ione A. Bazen (¶ 19(II)(pppp)) | | * | |
| David R Delaney (¶ 19(II)(qqqq)) | | * | |
| Dorothy A. Dalton (¶ 19(II)(rrrr)) | | | |
| Lawrence R. Jauch (¶ 19(II)(ssss)) | * | * | |
| James W. Knapp (¶ 19(II)(tttt)) | | * | * |
| Norman J. Kluska (¶ 19(II)(uuuu)) | | | |
| Vincent Agnifilo (¶ 19(II)(vvvv)) | * | * | * |
| Doris W. Forster (¶ 19(II)(wwww)) | | * | * |
| Mildred M Falkenstein (¶ 19(II)(xxxx)) | | | |
| Radcliffe H. and Lilian T. Smith (¶ 19(II)(yyyy)) | | * | |
| Ypsilanti True Value Hardware, Inc. (¶ 19(II)(zzzz)) | | | * |
| Marchilana Electric Company (¶ 19(II)(aaaaa)) | | | |
| Arnold Roberts, Sr. (¶ 19(II)(bbbbb)) | | * | |
| James A Elsberry (¶ 19(III)(a)) | | | |
| Robert Mahler (¶ 19(III)(b)) | | * | |
| Everett Poggi (¶ 19(III)(c)) | * | * | * |
| George A. Qua (¶ 19(III)(d)) | | * | |
| Robert Joel (¶ 19(III)(e)) | | | * |
| Patsy M. McCune (¶ 19(III)(f)) | | | |
| Steve W. and Joyce A. Bolton (¶ 19(III)(g)) | | | * |
| Cleveland and Betty J. Bias (¶ 19(III)(h)) | * | | * |
| Kenneth L. and Martha A. Enders (¶ 19(III)(i)) | | | |
| Gerald J. Marchant (¶ 19(III)(j)) | | | * |
| David W. Matthews (¶ 19(III)(k)) | | | * |
| John R. Samples (¶ 19(III)(l)) | * | | * |
| Quentin P. and Elizabeth M.A. Tuggle (¶ 19(III)(m)) | | | * |
| Thomas H. Barron (¶ 19(III)(n)) | | | |
| Bruce P. and Nancy E. DiDonato (¶ 19(III)(o)) | * | | * |
| Sara J. Knapp (¶ 19(III)(p)) | * | * | * |
| Joseph H. Howell (¶ 19(III)(q)) | | | * |
| Adrienne C. Thurston (¶ 19(III)(r)) | * | * | * |
| Selma E. Bartelds (¶ 19(III)(s)) | | | |
| Edna C. Root (¶ 19(III)(t)) | | | |
| Baby Ruth Henry (¶ 19(III)(u)) | * | | * |
| Ray S. Vredenburgh (¶ 19(III)(v)) | | | |

## APPENDIX E

The following 106 plaintiffs have made claims for relief for breach of either implied or written warranty under Magnuson-Moss.

1. John F. "Jack" Walsh and Employers Casualty Company (¶ 19(I)(a))

2. Donald L. Kerr (¶ 19(I)(d))

3. Ruth H. Simning (¶ 19(I)(f))

4. Jacob L. and Agnes R.M. Slemmer (¶ 19(I)(g))

5. John J. Godbold and Pennsylvania National Mutual Casualty Company (¶ 19(I)(i))

6. James T. Kennedy, Jr. (¶ 19(I)(j))

7. Strick's Motel, Inc. (¶ 19(I)(k))

8. Gladys M. Griffin (¶ 19(I)(*l*))

9. James B. Gilbert (¶ 19(I)(m))

10. Kay Planting Company (¶ 19(I)(n))

11. Irene A. Rooks (¶ 19(I)(o))

12. Maurice C. Brooks (¶ 19(I)(p))

13. Eileen H. Thoubboron and Amica Mutual Insurance Company (¶ 19(I)(q))

14. Foster A. Guffey (¶ 19(I)(r))

15. Martha D. Meidinger (¶ 19(I)(s))

16. Raymond W. Albertson III (¶ 19(I)(v))

17. Harold G. Soladay (¶ 19(I)(w))

18. Harry V. and Cynthia A. Shilvock (¶ 19(I)(x))

19. Lawrence W. Greene (¶ 19(I)(y))

20. Michael J. Wortman (¶ 19(I)(z))

21. Randy L. Bunnell (¶ 19(I)(bb))

22. Peter J. Benedetti (¶ 19(I)(cc))

23. Nola B. Whitley and B & W Grain, Inc. (¶ 19(II)(a))

24. Cully B. Oakes (¶ 19(II)(d))

25. Gerald and Amy Pedersen (¶ 19(II)(e))

26. Judith A. Rosenthal (¶ 19(II)(f))

27. Mildred E. Smith (¶ 19(II)(h))

28. Max C. Traven (¶ 19(II)(i))

29. Thomas A. and Alice L. Burns (¶ 19(II)(k))

30. Francis D. Johnstone (¶ 19(II)(n))

31. John G. and Joy L. Seidl (¶ 19(II)(o))

32. Dennis L. Bugbee (¶ 19(II)(p))

33. Nora Green (¶ 19(II)(q))

34. Menorah Chapels at Millburn, Inc. and Herbert Ross (¶ 19(II)(s))

35. Harry A. and Virginia M. Seroka (¶ 19(II)(u))

36. Jonathan A. Shatz (¶ 19(II)(w))

37. Glenn E. and Doris V. Sayles (¶ 19(II)(x))

38. Raymond B. Doutt and Nationwide Insurance Company (¶ 19(II)(z))

39. Juanita P. Opstein (¶ 19(II)(bb))

40. John B. Howell (¶ 19(II)(cc))

41. David R. and Jeannie S. Wingerter (¶ 19(II)(ee))

42. Stanley P. Mindock (¶ 19(II)(ff))

43. Joan I. Pearson (¶ 19(II)(gg))

44. Janice C. Harper (¶ 19(II)(hh))

45. Myron L. Riddle (¶ 19(II)(jj))

46. Gregory R. and Cynthia M. Maschmeyer (¶ 19(II)(mm))

47. Larry A. Brown (¶ 19(II)(oo))

48. Harris Nykamp (¶ 19(II)(qq))

49. Robert D. Wilson and Maine Bonding & Casualty Co. (¶ 19(II)(rr))

50. David M. Rupp and Farmers Union Insurance Company (¶ 19(II)(ss))

51. Floyd E. Flood (¶ 19(II)(tt))

52. Kenyon L. Sweitzer (¶ 19(II)(vv))

53. Teresa A. Sutcliffe (¶ 19(II)(ww))

54. Estate of William W. Buckingham, William J. Engel, Administrator and Donna B. Klemm (¶ 19(II)(xx))

55. William T. Spannagel (¶ 19(II)(zz))

56. Jerry L. Borden (¶ 19(II)(aaa))

57. Arthur V. Spies (¶ 19(II)(ccc))

58. Charles W. Ingland (¶ 19(II)(eee))

59. Donald D. Capodanno (¶ 19(II)(fff))

60. Ronald P. Dawley (¶ 19(II)(iii))

61. Tom Davis Electric Company, Inc. (¶ 19(II)(jjj))

62. William J. Davis (¶ 19(II)(kkk))

63. Arnold F. Mitch and Farmers Insurance Group (¶ (II)(lll))

64. Sara E. Locklear (¶ 19(II)(mmm))

65. Glen L. Norrington (¶ 19(II)(nnn))

66. Dock Burkhart (¶ 19(II)(qqq))

67. James F. Bingham (¶ 19(II)(rrr))

68. James L. and Nan J. Gerber (¶ 19(II)(sss))

69. Roy V. Barker (¶ 19(II)(vvv))

70. Vondracek TV Company (¶ 19(II)(www))

71. Jason E. Wilson (¶ 19(II)(yyy))

72. Henry W. Leeds (¶ 19(II)(zzz))

73. Frederick R. and Leonie R. Schroeder (¶ 19(II)(aaaa))

74. Arthur L. Diamond (¶ 19(II)(bbbb))

75. Abbot A. Estes (¶ 19(II)(dddd))

76. Daniel F. Berry, Sr. (¶ 19(II)(eeee))

77. Patsy Ruth Carter (¶ 19(II)(hhhh))

78. Herbert W. Wright (¶ 19(II)(iiii))

79. Jerome A. Eureti (¶ 19(II)(kkkk))

80. Kenneth E. Turner (¶ 19(II)(mmmm))

81. Sheila J. Newton (¶ 19(II)(nnnn))

82. Gordon E. Critoph (¶ 19(II)(oooo))

83. Ione A. Bazen (¶ 19(II)(pppp))

84. David R. Delaney (¶ 19(II)(qqqq))

85. Dorothy A. Dalton (¶ 19(II)(rrrr))

86. Norman J. Kluska (¶ 19(II)(uuuu))

87. Mildred M. Falkenstein (¶ 19(II)(xxxx))

88. Radcliffe H. and Lillian T. Smith (¶ 19(II)(yyyy))

89. Ypsilanti True Value Hardware, Inc. (¶ 19(II)(zzzz))

90. Marchilana Electric Company (¶ 19(II)(aaaaa))

91. Arnold Roberts, Sr. (¶ 19(II)(bbbbb))

92. James A. Elsberry (¶ 19(III)(a))

93. Robert Mahler (¶ 19(III)(b))

94. George A. Qua (¶ 19(III)(d))

95. Robert Joel (¶ 19(III)(e))

96. Patsy M. McCune (¶ 19(III)(f))

97. Steve W. and Joyce A. Bolton (¶ 19(III)(g))

98. Kenneth L. and Martha A. Enders (¶ 19(III)(i))

99. Gerald J. Marchant (¶ 19(III)(j))

100. David W. Matthews (¶ 19(III)(k))

101. Quentin P. and Elizabeth M.A. Tuggle (¶ 19(III)(m))

102. Thomas H. Barron (¶ 19(III)(n))

103. Joseph H. Howell (¶ 19(III)(q))

104. Selma E. Bartelds (¶ 19(III)(s))

105. Edna C. Root (¶ 19(III)(t))

106. Ray S. Vredenburgh (¶ 19(III)(v))